668 So.2d 1135 (1996)
Zola Haynes MOORE
v.
RLCC TECHNOLOGIES, INC., et al.
No. 95-CA-2621.
Supreme Court of Louisiana.
February 28, 1996.
*1136 Marshall Travis Napper, Shotwell, Brown & Sperry, Monroe, Harry Alston Johnson, III, Shreveport, for Applicant.
*1137 John Edward Morton, Fuhrer, Flournoy, Hunter & Morton, Alexandria, for Respondent.
John Stone Coulter, Richard P. Ieyoub, Attorney General, Baton Rouge, for amicus curiae State.
LEMMON, Justice.
This is a direct appeal from a judgment in a declaratory judgment action declaring unconstitutional La.Rev.Stat. 23:1032's grant of tort immunity to a principal or statutory employer of an injured employee of the direct employer.[1] The principal issue on appeal is whether this extension of immunity beyond the direct employer violates the equal protection of the laws guaranteed by La. Const. art. I, § 3 or the access to courts guaranteed by La. Const. art. I, § 22.

Procedural History
Plaintiff's husband, an employee of Manpower Temporary Services, was killed while working on a water pipeline at a plant operated by RLCC Technologies, Inc. In the ensuing wrongful death action against several defendants, plaintiff alleged that the hazards on RLCC's unsafe premises and the negligence of RLCC's employees combined to cause her husband's death. RLCC and its employees asserted the immunity granted by La.Rev.Stat. 23:1032 to a principal and its employees.
Plaintiff then filed an amended petition seeking a declaratory judgment that Section 1032 was unconstitutional to the extent that it granted tort immunity to a principal and its employees. By agreement, the declaratory judgment action was severed from the wrongful death action and was tried in advance of the trial on the merits.
The trial court rendered a judgment declaring La.Rev.Stat. 23:1032 and 1061 unconstitutional. The court noted that Sections 1032 and 1061 divide employees into two classifications, direct employees and statutory employees, and that statutory employees are discriminated against in regard to tort recovery solely on the basis of their employment affiliation with a direct employer or contractor who is executing work which is part of the trade, business or occupation of the statutory employer-principal. The court reasoned that the statute discriminated by denying employees of the direct employer recovery in tort for injuries negligently inflicted by employees of the principal, while allowing employees of the principal recovery in tort for injuries negligently inflicted by employees of the direct employer. The court also pointed out the statutory discrimination which allows employees of contractors and subcontractors recovery in tort for injuries negligently inflicted by employees of other subcontractors. Because La. Const. art. I, § 3 prohibits a law which "arbitrarily, capriciously, or unreasonably discriminate[s] against a person because of ... affiliation," the court placed the burden of proving constitutionality on the defendants under Sibley v. Board of Supervisors of La. State Univ. and Agric. and Mechanical College, 477 So.2d 1094 (La.1985). Finding that defendants did not bear their burden of proving that the discrimination against statutory employees on the basis of employment affiliation substantially furthered a legitimate state interest, the court declared Section 1032 unconstitutional.
The trial court further reasoned that La. Const. art. I, § 22 requires the Legislature to provide an adequate remedy for the recognized action for wrongful death in the workplace. Finding that Section 1032 denies injured employees an adequate remedy, the court added this as a further basis for the declaration of unconstitutionality.
Hence this direct appeal by defendants to this court under La. Const. art. V, § 5 D.[2]

History of La.Rev.Stat. 23:1032 and 1061
The Louisiana Workers' Compensation Act, originally adopted in 1914, represented a compromise in which the employer was *1138 granted tort immunity for all workplace accidents in exchange for absolute liability for compensation payments of medical expenses and partial wage replacement, while the employee gave up the right to recovery of full damages against the employer in some cases in exchange for recovery of lesser amounts as compensation for almost all workplace injuries without having to prove fault. The balance struck by this original legislative compromise has swung from time to time, but the compromise nature of the Act has remained the focal point of its viability.
La.Rev.Stat. 23:1032, as originally enacted, expressed the limitation of the employee's remedy on account of a compensable injury to the rights and remedies in the Act. This limitation, although not expressly stated at the time, clearly excluded other remedies against the employer.[3] There was no mention of any immunity for persons defined as a "principal" in La.Rev.Stat. 23:1061 or for employees of the direct employer or the principal.
Conversely, Section 1061 did not purport to grant any immunity to anyone, but rather granted to injured employees an additional source of compensation recovery.[4] The original purpose of Section 1061, a provision which is found in the compensation acts of most states, was to prevent an employer from avoiding compensation responsibility by interposing an independent contractor or sub-contractor between himself and his employee. Wex S. Malone & H. Alston Johnson III, Workers' Compensation Law and Practice, 13 Louisiana Civil Law Treatise, § 128 (3d ed. 1994). The Legislature closed that loophole, and gave the injured employee an additional source of compensation recovery, by subjecting any person (called a principal or statutory employer) to compensation liability when that person undertakes work that is part of his trade business or occupation by means of a contract with another or when that person contracts to perform work and sub-contracts a portion of that work to another. Id. at § 121.
Thus, Section 1061 by its terms has always given an advantage to injured employees and has never purported to take any advantage away from injured employees. Nothing in the Act expressly provided, or even suggested, that the principal was entitled to any tort immunity, even if the principal actually had to pay compensation benefits to an injured employee.[5] The Legislature arguably *1139 deemed immunity inappropriate since a principal was entitled to full indemnity for payment of compensation and could avoid compensation exposure altogether by requiring the contractor, as part of the contract, to carry workers' compensation insurance for its employees.
In 1950, this court, and not the Legislature, established tort immunity for the principal. Without any discussion of the absence in Section 1032 or 1061 of any suggestion of a legislative intent to grant tort immunity to a principal, or of a principal's apparent ability to avoid any compensation liability, or of the question whether immunity should only apply if the principal actually pays compensation, this court in Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852 (1950) rendered a judgment maintaining an exception of no cause of action and limiting the plaintiff's remedy against the principal to compensation under the Act.
Despite suggestions that this court reconsider the Thibodaux decision,[6] neither this court nor the Legislature reexamined the issue for twenty-six years.
In 1976, the Legislature set out to abolish the so-called "executive officer" tort actions. Because Section 1032 expressly granted tort immunity only to the employer in actions by an injured employee and did not extend tort immunity to employees of the employer, the courts had recognized under certain circumstances a cause of action by an injured employee against certain other employees of the employer, who were frequently covered as "executive officers" under the employer's insurance policy. See Adams v. Fidelity and Casualty Co. of N.Y., 107 So.2d 496 (La.App. 1st Cir.1958); Canter v. Koehring Co., 283 So.2d 716 (La.1973). When the 1976 amendment to Section 1032 added employees of the employer as persons immune in tort suits by an injured employee, the Legislature also granted statutory immunity for the first time to principals and employees of principals, and the Thibodaux decision was thereby codified.[7]See Rowe v. Northwestern Nat'l. Ins. Co., 471 So.2d 226, 229 (La.1985) (Lemmon, *1140 J., concurring). It is that legislative granting of immunity to principals and employees of principals that is under constitutional attack in this declaratory judgment action.

Burden and Standard of Proof
Statutes are presumed to be constitutional. Accordingly, the party challenging the validity of a statute generally has the burden of proving unconstitutionality. Moore v. Roemer, 567 So.2d 75, 79 (La.1990). The party challenging the constitutionality of a legislative enactment also must cite the particular constitutional provision that is alleged to limit the Legislature's powers. Chamberlain v. State Through Dept. of Transp. and Dev., 624 So.2d 874 (La.1993). When the challenging party cites La. Const. art. I, § 3, the burden may be shifted to the proponent to prove constitutionality under Sibley v. Board of Supervisors of La. State Univ. and Agric. and Mechanical College, 477 So.2d 1094 (La.1985).
The threshold issue in the present case is whether the burden of proof on the equal protection issue rests with plaintiff or with defendants.[8]
La. Const. art. I, § 3 provides:
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime. (emphasis added).
The first three sentences in Section 3 establish different levels of review or scrutiny of the Legislature's actions. The first sentence sets forth a general rule against discrimination and empowers the courts to expand the equal protection guarantee to other types of classifications besides those expressly enumerated thereafter. The second sentence uses absolute language, permitting no discrimination with respect to race or religion. The third sentence prohibits arbitrary, capricious or unreasonable discrimination with respect to six enumerated classifications, but provides no express guidance as to the appropriate level of review. Lee Hargrave, The Louisiana State Constitution, A Reference Guide 24 (1991).
The third sentence of Section 3 was addressed in Sibley v. Board of Supervisors of La. State Univ. and Agric. and Mechanical College, 477 So.2d 1094 (La.1985). In Sibley, this court held that a legislative classification between medical malpractice victims with slight or medium class injuries, who were entitled to full recovery of damages, and seriously injured medical malpractice victims, who were only entitled to recover a limited portion of their damages, constituted classification based on physical condition. Accordingly, this court held that when such a classification is under review, the classification itself presents a prima facie case of unconstitutionality, and the burden is on the proponents of the statute to prove that the legislative classification substantially furthers an important governmental objective.
La. Const. art. I, § 3 thus sets up a spectrum for analyzing equal protection challenges based on legislative classifications. At one extreme are laws that classify individuals based on race or religious beliefs. Such laws are repudiated completely.
In the middle of the spectrum are laws that fall within the express prohibition set forth in the third sentence of La. Const. art. I, § 3, which limits the Legislature's power to classify individuals based on the six enumerated grounds. When a statutory classification is based on any of these enumerated grounds, the classification is a prima facie denial of equal protection. Because the ordinary presumption that statutes are constitutional no longer applies, there is a reversal of the ordinary placement of the burden of proof on the party asserting unconstitutionality. The burden is shifted to the proponent of the classification and the standard of *1141 review is heightened, requiring the proponent to establish that the classification substantially furthers an important governmental objective.
At the other end of the spectrum are laws that do not classify individuals on any of the enumerated bases. These laws are subject to the minimal standard of scrutiny for every statutory classificationthat is, the classification must be rationally related to a legitimate governmental purpose. Whenever a person disadvantaged by a legislative classification not enumerated in Section 3 seeks to have the classification declared unconstitutional, that person has the stringent burden of demonstrating that the classification does not suitably further any appropriate governmental interest.
Plaintiff argues that this action falls within the ambit of the intermediate review level recognized in Sibley and thus shifts the burden to defendants to prove the constitutionality of the classification. Contending that the 1976 amendment to Section 1032 set up separate classifications of employees according to their employment affiliation, plaintiff argues that this classification violates La. Const. art. I, § 3's prohibition against discrimination based on affiliation.
Even if one accepts that the 1976 amendment to Section 1032 set up a classification which discriminated between employees based on their employment affiliation, there is no express prohibition in La. Const. art. I, § 3 based on such an affiliation. Section 3 only prohibits discrimination based on political affiliation or religious affiliation, and does not expressly prohibit discrimination based on other types of affiliations.
This court rejected a similar attempt to achieve elevated status for employment affiliation in Parker v. Cappel, 500 So.2d 771, 774 (La.1987), which involved an equal protection challenge to the workers' compensation laws excluding most sheriff's deputies from the Act's coverage. The plaintiff in Parker argued that she suffered discrimination in her workers' compensation claim because her decedent was affiliated with a political subdivision, i.e., the sheriff's office. Disagreeing, this court held that "[p]olitical ideas or affiliations do not refer to an individual's choice of employment or employer, but instead refer to basic rights to freedom of beliefs and freedom of association, with respect to government." Id. at 774 (citing Lee Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L.Rev. 1, 10 (1974)).
The term "affiliations" in Section 3 clearly refers to political and religious affiliations. While plaintiff contends that this court has extended "affiliation" to include "biological affiliation" in cases involving illegitimates, this court in Pace v. State, Through La. Employees Retirement Sys., 94-1027 (La. 1/17/95), 648 So.2d 1302, 1305 (La.1995) clearly indicated that the basis for according preferential status to illegitimates is the express reference in La. Const. art. I, § 3 to "birth." See also Lee Hargrave, The Louisiana State Constitution, A Reference Guide 24 (1991) (noting that the reference to birth encompasses discrimination against illegitimate children). Because the discrimination alleged in the present case is not expressly prohibited by La. Const. art. I, § 3, the classification is presumed constitutional, and the burden of proving unconstitutionality is placed on plaintiff as the party seeking to invalidate the provision. Plaintiff thus had the burden of proving that the statutory classification does not suitably further any appropriate state interest.

Equal Protection
In order to analyze an equal protection challenge, it is helpful to make three basic inquiries. The first inquiry involves identifying the challenged classification. The classification means the distinction made between one group and another or the basis on which one group is treated differently from another. The classification here, according to plaintiff and the trial court, is between statutory employees and direct employees.
The second inquiry involves identifying the person who suffers the discrimination. According to plaintiff, the employees of employers who contract with principals are being disadvantaged because they (like other employees) are barred from tort recovery against the direct employer who is liable for compensation, but (unlike other employees) *1142 are also barred from tort recovery against the principal who is virtually never liable ultimately for compensation.
The third inquiry involves determining the Legislature's purpose for the classification. On this issue, the placement of the burden of proof is critical. As discussed above, the placement of the burden of proof and the determination of the appropriate level of scrutiny depends on where the challenged classification falls in the spectrum for analyzing equal protection challenges under La. Const. art. I, § 3. Plaintiff's burden in the present case is to prove that the legislative classification does not further any appropriate governmental interest.
The Legislature's purpose in establishing classifications must be considered in the context in which the legislation was enacted. Plaintiff's arguments, therefore, must be considered in the context of the 1976 amendment to Section 1032, in the light of the historical background of that section and Section 1061 outlined earlier in this opinion.
Plaintiff's primary argument is that an injured statutory employee is disadvantaged because he or she is denied recovery in tort from either the direct employer or the principal, while the direct employer is liable in compensation and the principal is not, as a practical matter. To emphasize this unfairness, plaintiff points out that an injured statutory employee cannot recover in tort from principals whose employees cause a workplace injury, but can recover in tort from other contractors or subcontractors whose employees cause the same workplace injury. The gist of plaintiff's arguments is that an injured statutory employee is disadvantaged by the 1976 amendment because principals, in reality, receive the advantage of tort immunity without the disadvantage of compensation liability.
Plaintiff's arguments are premised on the unsupported assertion that the 1976 amendment to Section 1032 granted the benefits of statutory immunity in tort to the principal who does not truly bear any corresponding responsibility for compensation to the statutory employee. This is factually incorrect. The principal, in fact, is statutorily exposed to primary compensation liability. Whatever the remoteness of the possibility that the principal will ever be called upon to make compensation payments or will not be reimbursed for payments made, the fact remains that the principal who has been granted the same tort immunity as the employer has the same compensation liability as the employer under the statute. In effect, the 1976 amendment to Section 1032 recognized the employer-employee relationship established in Section 1061 between the principal and the statutory employee.[9]
Thus, under the appropriate level of scrutiny, we conclude plaintiff has failed to prove that the 1976 amendment to Section 1032, granting tort immunity to a principal who is primarily liable by statute for compensation, does not suitably further any appropriate governmental interest.[10] The choice of granting absolute tort immunity to the principal, whether or not the principal actually pays compensation, may be unwise or may grant heavy favoritism to one side of the compensation balance, but the power to make that choice is vested in the Legislature subject to applicable constitutional restraints.
Moreover, this court has previously approved the constitutionality of the 1976 *1143 amendment's granting of tort immunity to the injured worker's co-employee, an entity who has absolutely no potential exposure to compensation liability. In Bazley v. Tortorich, 397 So.2d 475 (La.1981), this court noted the Legislature's primary purpose in amending Section 1032 was "to broaden the class of defendants to be granted immunity from suits by injured employees in tort or delict." Id. at 479. Upholding that purpose under the rational basis standard traditionally applied to legislation involving economics and social welfare legislation such as workers' compensation,[11] this court reasoned that the extension of the exclusive remedy rule was reasonable in relation to one of the goals of workers' compensation legislation, which is to spread the cost of doing business to the industry as opposed to the individual employer. This court stated:
[I]n the area of economics and social welfare, a legislature does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some reasonable basis, it does not offend the constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality.
Id. at 484. Continuing, this court commented on the limited nature of judicial review:
We do not decide that the legislature's formulation of the exclusive remedy rule is wise, that it best fulfills the relevant social and economic objectives that Louisiana might ideally espouse, or that a more just and humane system could not be devised. Conflicting claims of morality and intelligence are raised by opponents and proponents of almost every measure, certainly including the one before us. But the difficult economic and social problems presented by workers' compensation programs cannot properly be resolved by this Court. Our federal and state constitutions may impose certain procedural safeguards upon systems of workmen's compensation, but they do not empower this Court to second-guess legislators who are charged with the heavy responsibility of regulating the social obligations that exist between the employee, the employer, and the public.
Id. at 484-85 (citations omitted).
Bazley, as noted above, involved co-employee immunity, while the present case involves statutory employer immunity. Nevertheless, the constitutional equal protection analysis in Bazley is equally dispositive of the issue presented here.[12]
While the extending of absolute immunity to an entity that almost never pays compensation may be unwise and arguably unnecessary to achieve the purpose of assuring compensation availability to injured workers, this is a legislative, and not a judicial, choice.
We thus conclude that the trial court erred in declaring La.Rev.Stat. 23:1032 unconstitutional based on La. Const. art. I, § 3.

Access to Courts
The other basis cited by the trial court for declaring Section 1032 unconstitutional was the access to courts guarantee of La. Const. art. I, § 22, which provides:
All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation or other rights.
Bazley is likewise dispositive of this issue. In Bazley, this court rejected the argument that the limitation of tort recovery resulting from co-employee immunity was a violation of Section 22, reasoning:

*1144 This provision, like the Fourteenth Amendment to the United States Constitution, protects an individual's access to the judicial process. Where access to the judicial process is not essential to the exercise of a fundamental constitutional right, the legislature is free to allocate access to the judicial machinery in any system or classification which is not totally arbitrary. The legislation under review does not substantially alter a claimant's access to the judicial process, and, therefore, it does not contravene the access to courts guarantee of our state constitution. Bazley's complaints that he has been denied the right to sue in tort for full recovery of his injuries, and that he is discriminated against with respect to other plaintiffs who may bring such suits, actually raise the same substantive due process and equal protection issues which we have already resolved.
397 So.2d at 485 (citations omitted).
We therefore conclude that the trial court erred in relying on La. Const. art. I, § 22 to declare the statutory employer immunity unconstitutional.

Decree
Accordingly, the judgment of the trial court declaring La.Rev.Stat. 23:1032 and La. Rev.Stat. 23:1061 unconstitutional is reversed. This case is remanded to the trial court for further proceedings.
NOTES
[1] The judgment also declared La.Rev.Stat. 23:1061 unconstitutional, but that statute does not confer any immunity.
[2] Given the severance of the constitutional issue from the merits, the sole issue before the court on this direct appeal is the constitutionality of Section 1032 on its face. Therefore, there is no factual issue before this court regarding the applicability of the statutory employer defense.
[3] The second paragraph of original Section 1032 spoke of the liability of the employer. The first paragraph did not expressly state whose liability was limited, but the context clearly indicated the intent to limit the employer's liability.
[4] At the present time, La.Rev.Stat. 23:1061 provides:

A. When any person, in this Section referred to as the "principal", undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable to performing the work.
B. When the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.
Except for the second sentence of Paragraph A which was added in 1989, and the addition of Paragraph B in 1926, Section 1061 has remained virtually unchanged since the adoption of the Workers' Compensation Act in 1914.
[5] A 1926 amendment added a provision, which is now Paragraph B, that recognized a principal's entitlement to indemnity against the direct employer for compensation benefits actually paid to the injured employee.
[6] See, e.g., Broussard v. Heebe's Bakery, Inc., 254 So.2d 284 (La.App. 4th Cir.1971) (Lemmon, J., concurring). This court granted certiorari in Broussard, but reversed on other grounds and did not reach the issue. Former Justice Albert Tate, Jr. concurred in this court's decision, expressing his view that extending tort immunity to the statutory employer who has not paid compensation was inconsistent with the statute's true purpose of "afford[ing] an injured employee an alternative remedy in compensation against a principal, who is entitled to indemnification from the true employer of the injured workman." Broussard v. Heebe's Bakery, Inc., 263 La. 561, 268 So.2d 656, 661 (1972) (Tate, J., concurring). See also George W. Pugh, Jr., Judge Albert Tate, Jr. and the Employee Personal Injury Action: An Overview, 47 La.L.Rev. 993, 1005-06 (1987).
[7] As amended in 1976 and in 1989, La.Rev.Stat. 23:1032 provided:

A. (1)(a) The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease;
(b) This exclusive remedy is exclusive of all claims, including any claims that might arise against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal under any dual capacity theory or doctrine.
(2) For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.
B. Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
C. The immunity from civil liability provided by this Section shall not extend to:
(1) Any officer, director, stockholder, partner, or employee of such employer or principal who is not engaged at the time of the injury in the normal course and scope of his employment; and
(2) To the liability of any partner in a partnership which has been formed for the purpose of evading any of the provisions of this Section.
The underscored language in Subsections A and B, and all of Subsection C, were added by the 1976 amendment, which also added the "intentional act" exception to exclusivity of remedies.
Subsection A(1)(b) was added by a 1989 amendment.
[8] While plaintiff also relies on La. Const. art. I, § 22's access to courts provision, analysis of that provision does not entail for any shift in the burden or standard of proof. Bazley v. Tortorich, 397 So.2d 475, 479 (La.1981).
[9] Plaintiff's argument regarding the difference in treatment between principals, on the one hand, and contractors and subcontractors, on the other, was tangentially at issue in Johnson v. Alexander, 419 So.2d 451 (La.1982) and in Smith v. Cotton's Fleet Service, 500 So.2d 759 (La.1987). Underscoring the significance of the employer-employee relationship as the underlying basis for workers' compensation, this court in Johnson and in Smith noted that the difference is the result of legislative choice. While the Legislature has statutorily created an employer-employee relationship between a principal and the contractor's employees, no statutory provision creates an employer-employee relationship between contractors or subcontractors and the principal's employees, and the contractors and subcontractor have no obligation to pay compensation benefits.
[10] The 1976 amendment to Section 1032 merely codified the immunity granted in Thibodeaux. The amendment also granted a new immunity to employees of both the direct employer and the principal, but on the other hand gave to injured employees a new remedy for intentional torts committed by either the direct employer or the principal, or their employees.
[11] A noted commentator has observed that "although the opposite view was at one time urged in the early days of constitutional uncertainty, it is now well settled that the constitutionality of compensation legislation rests not upon the private employment contract but upon public welfare and police powers." Arthur Larson, 1C Workmen's Compensation Law § 49.22 (1995).
[12] The fact that Bazley was decided before Sibley is of no moment. While Sibley rejected the federal equal protection analysis and adopted a separate three-tier approach for resolving state equal protection challenges, Sibley did not depart from the general rule according considerable deference to the Legislature in addressing matters of police power and social welfare such as workers' compensation legislation.