11JONES, Judge.
This is an appeal from a judgment rejecting claims of wrongful termination brought by appellants Rudolph Lewis and Clennon Nixon.
Both men appealed their terminations and eventually instituted the instant litigation against various officials of the Orleans Parish School Board, the Governor of the State of Louisiana, and the Attorney General for the State of Louisiana.[1] Plaintiffs alleged that Act 79 of 1988 was unconstitutional and/or alternatively, the Orleans Parish School Board failed to comply with the requirements of Act 79 of 1988 when it terminated them.
Following the trial of the case, the trial court ruled in favor of the defendants. On appeal plaintiffs argue the trial court came to an improper legal determination in concluding that Act 79 of 1988 did not violate appellant’s right 12to Equal Protection of the law. Alternatively, plaintiffs argue the trial court committed manifest error concluding that the Orleans Parish School Board, in implementing a budget, complied with the requirements of Act 79 of 1988.
Rudolph Lewis was employed by the Orleans Parish School Board in 1978 and remained employed by the School Board until August 9,1989, when he was terminated. At the time of his termination he was employed as a Textbook Coordinator. In a letter dated July 10, 1989, advising him of the termination, Mr. Lewis was told that his position was being terminated “due to severe budgetary restraints caused by expenditure requirements exceeding operating revenues and allocating increased resources directly to school sites.” Plaintiff Clennon Nixon was employed with the Orleans Parish School Board for twenty years and was most recently employed in the capacity of Program Evaluator. In a letter dated May 31, 1991, Mr. Nixon was advised that his position was being terminated “due to severe budgetary restraints caused by expenditure requirements exceeding operating revenues and allocating increased resources directly to school sites.” Both plaintiffs eventually learned that they were being terminated pursuant to the provisions of Act 79 of 1988.

Constitutionality of Act 79 of 1988

La. R.S. 17:524, as amended by Act 79 of 1988 provides:
See. 524. Rules and regulations impairing provisions prohibited
A. Nothing contained in the Louisiana Revised Statutes of 1950 shall be construed as conferring upon the Orleans Parish School Board the authority to adopt rules and regulations which may impair or nullify the provisions of this Subpart. However, the school board may adopt and implement policies and procedures for reducing the work force of its employees other than teachers for reasons of economy, without complying with the provi *254 sions of this Subpart. No employee having regular and permanent status shall be laid off until all ^probationary persons have been laid off within the same job classification.
B. For the purposes of this Section, “reasons of economy” means when a position is abolished because of lack of funds, after considering all other reductions in cost that can be made.
Plaintiffs argue that the legislative classification created in this statute violates the equal protection guarantees of Art. 1, Section 3 of the Louisiana Constitution of 1974 because it differentiates between tenured teachers and tenured non-teachers.
Art. 1, Section 3 of the Louisiana Constitution of 1974 provides:
Sec. 3. Right to Individual Dignity
Section 3. No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case punishment for crime.
Generally speaking, statutes are presumed to be constitutional. State v. Powell, 96-0282 (La.3/8/96); 669 So.2d 413, 414 (La.1996), citing Lakeside Imports, Inc. v. State, 94-0191 (La.7/5/94), 639 So.2d 253. The burden of proving unconstitutionality rests upon the party challenging the validity of the statute. Moore v. Roemer, 567 So.2d 75,79 (La.1990). When the basis given for challenging the statute is Art. 1, Section 3, the burden may be shifted to the proponent to prove constitutionality. Sibley v. Board of Sup’rs of Louisiana State University, 477 So.2d 1094 (La.1985). In order to determine whether the burden rests on the party challenging the statute or the proponent of the statute one must first determine the levels of review or scrutiny required of the particular legislative enactment. In Moore v. RLCC Technologies, Inc., 95-2621 (La.2/28/96); 668 So.2d 1135, the Court delineated the levels of review or scrutiny | ¿required for various types of legislative enactments. Laws that classify individuals based on race or religious beliefs are repudiated completely. Id. at 1140. Laws that classify based on the other six enumerated grounds in Art. 1, Section 3 represent cases where a prima facie denial of equal protection is established. Id. at 1140. In the second type of cases the burden is shifted to the proponent of the classification and the standard of review is heightened, requiring the proponent to establish that the classification substantially furthers an important governmental objective. Id at 1140-1141. However, laws that do not classify individuals on any of the bases specifically enumerated in Art. 1, Section 3 are merely subject to the minimal standard of scrutiny for statutory classification, i.e. the classification must be rationally related to a legitimate governmental purpose. A person disadvantaged by a legislative classification not enumerated in Art. 1, Section 3 who seeks to have a classification declared unconstitutional has the stringent burden of demonstrating that the classification does not suitably further any appropriate governmental interest. Id. at 1141.
The classification created by Act 79 of 1988 is that of tenured teachers and tenured non-teachers employed by the school systems. Pursuant to the provisions of Act 79 of 1988, school boards may adopt and implement policies and procedures for reducing the work force of its employees for reasons of economy. However, teachers are exempt from the provisions of Act 79 of 1988.
Plaintiffs argue this act does not further any appropriate state interest; therefore, the statute violates the provisions of Art. 1, Section 3.
In upholding the validity of Act 79 of 1988, the trial court specifically found:
OPSB’s primary purpose, perhaps only purpose, is to educate children and others within its statutory mandate. The Court lacks evidence to show a denial of equal protection. A rational classification exists to distinguish |5between teachers and non teachers for teachers are necessary to the OPSB’s prime function.
*255 .■is noted by the trial court, educating children is the paramount purpose of the school system. Teachers are absolutely essential for the accomplishment of this goal. Consequently, we do not find it is unreasonable to allow non-teaching personnel to be treated differently from teaching personnel in terms of being subjected to lay off provisions in times of budgetary crises. The trial court did not err when it found the plaintiffs failed to show a denial of equal protection.
The testimony supports a finding that plaintiff Rudolph Lewis was the only person employed in the system as a textbook coordinator. Because the OPSB was able to have the textbooks sent directly to the schools, it was not necessary to keep all employees who formerly handled textbooks. Only a manager was retained. Plaintiff Lewis did not prove that the OPSB discriminated against him when they only kept this person. The evidence supports a finding plaintiff’s termination was made for budgetary reasons.
Assuming arguendo that plaintiff Glennon Nixon’s claim has not prescribed,[2] the record also supports a finding that he failed to produce any evidence to substantiate a finding that he was treated differently from anyone similarly situated to him.
The burden of proving an equal protection violation rested with the plaintiffs. Plaintiffs could not reasonably argue that no rational basis existed for treating non-teacher personnel differently from teachers, particularly in view of the testimony of Dr. Everett Williams, the former Superintendent for the Orleans | (¡Parish School System and Mr. Frank Fudesco, a former associate superintendent. Both testified that at the time of the terminations, the OPSB was under constraints to reduce expenses so as to balance the budget.

Adoption of budget as an instrument of implementation

In the next assignment of error plaintiffs argue the terminations were not valid because the Orleans Parish School Board failed to comply with the requirements of the act when it implemented the terminations simply by adopting the budget. Plaintiffs rely primarily on the testimony of Dr. Bran-nan, the former Policy Manager for OPSB to establish that the Board had no policy to implement the terminations pursuant to Act 79. Dr. Brannan testified she was employed by the Orleans School Board as the Policy Manager for the School System from 1987 until 1990. During her employment she did not have any hand in formulating policy with the School Board to reduce its work force pursuant to Act 79. There was no policy in the Policy Manual that said anything about reduction in force. However, Dr. Brannan admitted on cross that she was aware that procedures do exist outside the policy manual.
However, Dr. Everett Williams who served as superintendent of schools from 1985 to 1992, testified that the instrument used to determine what programs, projects and personnel the school system would have for a given year was the budget. According to him, the budget was the instrument used to operate the school district for a given fiscal year. He also testified concerning the extreme deficits in the budget during his tenure as Superintendent. Although Dr. Williams admitted that a written document dated July 20, 1992 was the first formal official Board policy dealing with personnel reduction as far as he knew; he also maintained that the system had in place a set procedure for handling reductions in personnel prior to the placing of that policy in the manual. Numerous letters and pother documents were admitted into the record to support a finding that the budget was the final document used to effectuate a reduction of personnel at the time the two plaintiffs were terminated.
Dr. Williams’ testimony was corroborated by Mr. Fudesco, who formerly served as an associate superintendent for almost ten years. He testified that his duties included *256 involvement with the budget. He was on the budget team every year from 1985 until the time he left the system in 1994. Mr. Fudes-eo testified that adoption of the budget was the method used for adopting the policy of which positions would be eliminated to balance the budget.
In the absence of any statutory provisions requiring a specified procedure other than adoption of the budget for implementing Board policies, we cannot say the trial court committed manifest error in reaching the conclusion that eliminating the positions through adoption of the budget constituted sufficient compliance with Act 79.
For these reasons the judgment of the trial court is affirmed.

AFFIRMED.

. This litigation was initially certified as a class action; however, this Court found the trial court erred by certifying the class. Lewis v. Roemer, et al., 94-CA-0317 (La.App. 4 Cir. 9/29/94); 643 So.2d 819. The case was remanded for a hearing to determine whether the numerosity requirement for the class was met, and eventually proceeded as a lawsuit involving these two individual plaintiffs.

. The trial court did not address the prescription issue, but clearly Mr. Nixon joined the litigation more than a year after he was terminated. The fact that he did not become aware of the fact that no policy for termination existed does not require that the concept of contra non valentem be invoked to toll prescription.