906 So.2d 518 (2005)
John Burke SANDERS
v.
Persephanie SILVERTHORN.
No. 2003 CA 2726.
Court of Appeal of Louisiana, First Circuit.
February 11, 2005.
Writ Denied April 29, 2005.
*520 Ernest S. Anderson, Slidell, Counsel for Defendant/Appellant Persephanie Silverthorn.
Cynthia Mauroner Petry, Covington, Counsel for Plaintiff/Appellee John Burke Sanders.
Before: GUIDRY, GAIDRY, and McCLENDON, JJ.
GAIDRY, J.
The mother of a child, not born of a marriage to the natural father, appeals a judgment ordering that the surname of the minor child be changed to that of the natural father. We affirm.

FACTS AND PROCEDURAL HISTORY
In August 1999, the parties to this appeal, Persephanie Silverthorn and John Burke Sanders, learned that Silverthorn was pregnant with the couple's child. They were not married. Silverthorn's anticipated due date was April 25, 2000; however, in late February 2000, Silverthorn's water broke and despite being hospitalized and placed on strict bed rest, she gave birth to a son prematurely on March 11, 2000. The mother named the child Quinton Burke Silverthorn. Shortly after Quinton's birth, Sanders executed an affidavit of paternity acknowledging that he was the child's natural father and signed a certificate of live birth also indicating the same.
Two years later, on June 21, 2002, Sanders filed a petition for change of name, which Silverthorn opposed. Following the denial of a motion for summary judgment and the overruling of exceptions urging the objections of no cause of action and res judicata, a trial on the merits of Sanders' petition was held on June 23, 2003. On hearing the arguments and evidence presented by the parties, and after taking the matter under advisement, the trial court rendered judgment in favor of Sanders, granting his request to change the surname of the minor child from "Silverthorn" to "Sanders." It is from the judgment decreeing that the minor child's surname be changed to "Sanders" that Silverthorn now appeals.

ASSIGNMENTS OF ERROR
The appellant specifies the following alleged errors in the judgment rendered:
I) Whether the trial court erred in not finding that the effect of the execution of the affidavit of acknowledgment of paternity and certificate of live birth *521 was that the child's surname would be "Silverthorn."
II) Whether the trial court erred in allowing parol evidence to vary or explain the clear terms of the acknowledgement of paternity affidavit and certificate of live birth that the name of the minor child is "Silverthorn."
III) Whether the trial court erred in upholding the constitutionality of La. R.S. 40:34(B)(1)(a)(iv) and La. R.S. 13:4751(C)(4) as applied to the facts of this case.
IV) Whether the trial court erred in not granting appellant's Res Judicata Exception.
V) Whether the trial court erred in not finding that appellee's action to change the surname of the minor child to have been barred.
VI) Whether the trial court erred in not recognizing the right of the domiciliary parent to designate the surname of the child.

DISCUSSION
By this appeal, we are asked to consider what effect a natural father's signing of an affidavit of paternity and a certificate of live birth should have on the rights accorded to him under La. R.S. 40:34(B)(1)(a)(iv), which at the time Quinton's birth certificate was filed,[1] provided:
If the child is an illegitimate child as provided in Civil Code Article 180, the surname of the child shall be the mother's maiden name, if the natural father is unknown. If the natural father is known, has acknowledged the child, and has agreed to a plan of support, the surname of the child shall be that of the natural father unless the mother and the natural father agree otherwise . . . . For purposes of this Item, "natural father" means a father whose child has been legitimated by subsequent marriage of the parents or by notarial act, or a father who has formally acknowledged his illegitimate child or who has been judicially declared the father in a filiation or paternity proceeding.
Thus, the task before us is to determine the nature of the affidavit of paternity and certificate of live birth and the legal effect of these documents on Mr. Sanders' rights under La. R.S. 40:34(B)(1)(a)(iv).

Parol Evidence
Silverthorn asserts that the trial court erred in allowing Sanders to introduce parol evidence regarding his intent in signing the affidavit of paternity and the certificate of live birth. Generally, parol evidence is inadmissible to vary or negate the terms of an authentic act. See La. C.C. art. 1848. Both the affidavit of paternity and the certificate of live birth were *522 executed in authentic form. However, parol evidence is admissible to show fraud, mistake, illegality, want or failure of consideration, or to explain an ambiguity when such explanation is not inconsistent with the written terms. Holliday v. Holliday, 00-0533, p. 6 (La.App. 1 Cir. 8/17/01), 795 So.2d 423, 428, amended on reh'g on other grounds, 00-0533 (La.App. 1 Cir. 9/28/01), 797 So.2d 774.
Additionally, when the words of a contract do not address a specific situation, courts must examine not only the words of the contract, but also surrounding circumstances to determine if the parties intended to include any implied incidental obligations in that situation. Fleming v. Acadian Geophysical Services, Inc., 02-264, p. 3 (La.App. 3 Cir. 10/2/02), 827 So.2d 623, 627, writ denied, 02-2717 (La.1/10/03), 834 So.2d 440.
In Day v. Day, 02-0431, p. 6 (La.App. 1 Cir. 5/28/03), 858 So.2d 483, 487, writ denied, 03-1845 (La.11/7/03), 857 So.2d 492, this court found that although neither party to the community property settlement agreement sought to negate or vary the contents of the agreement nor did either party contend that the agreement was ambiguous or that there was a mutual mistake in drafting or confecting the agreement, parol evidence was admissible. In that case, parol evidence was being introduced not to vary the terms of the agreement, but to explain the relationship between the agreement and an earlier judgment; a factual question that could not be discerned by simply examining the two documents at issue. Day, 02-0431 at p. 6, 858 So.2d at 488.
Likewise, in the matter before us, neither party seeks to vary the terms of the affidavit of paternity or the certificate of live birth; rather, each party seeks to explain the relationship between these two documents and La. R.S. 40:34(B)(1)(a)(iv). Thus, the trial court was correct in allowing parol evidence to clarify this issue.

Interpretation of Affidavit of Paternity and Certificate of Live Birth
Silverthorn insists that the trial court erred in failing to interpret the affidavit of paternity and the certificate of live birth as proof of the parties' agreement to designate "Silverthorn" as the child's surname. The interpretation of a contract is the determination of the common intent of the parties with courts giving the contractual words their generally prevailing meaning unless the words have acquired a technical meaning. La. C.C. art. 2047; Campbell v. Melton, 01-2578, p. 6 (La.5/14/02), 817 So.2d 69, 74. In attempting to determine common intent, we may not seek a different interpretation "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences." La. C.C. art. 2046. However, if words of a contract are susceptible of different meanings, we must interpret them in the manner that "best conforms to the object of the contract." La. C.C. art. 2048; Hewitt v. Safeway Insurance Company of Louisiana, 01-0115, p. 3 (La.App. 3 Cir. 6/6/01), 787 So.2d 1182, 1185. Intent is an issue of fact, which is to be inferred from all of the surrounding circumstances. Fleniken v. Entergy Corporation, 99-3024, p. 14 (La.App. 1 Cir. 2/16/01), 790 So.2d 64, 73, writs denied, 01-1269, 01-1295 (La.6/15/01), 793 So.2d 1250, 1252. Hence, the trial court's findings regarding the intent of the parties are subject to review by this court for clear or manifest error.
Applying these general rules of contractual interpretation, we cannot agree with Silverthorn that Sanders' execution of the documents in question should be construed as consent to the data contained *523 therein; rather, a plain reading of the documents support an interpretation that simple acknowledgment and attestation of the veracity of the statements and information contained in the documents occurred.
The information listed on the front page of the Acknowledgement of Paternity Affidavit[2] is divided into four general sections: Child's Information, Mother's Information, Father's Information, and a final section consisting of the notarized certification made by the parents. The portion of the certification section signed by Sanders is comprised of the following declarations:
FATHER: I certify that I am the biological FATHER of the child named above and that all statements made herein are true and correct to the best of my knowledge. I am signing this Affidavit voluntarily and of my own free will. I acknowledge that I have received oral and written notice of the legal rights and consequences resulting from my acknowledging the paternity of my child and I understand this notice.
The Certificate of Live Birth lists information regarding the date, time, and place of the child's birth, as well as the child's name and vital statistics. It also lists the names, dates, and places of birth of the parties listed as the parents of the child, and then includes a place for the natural father to sign with the following language in superscript to the left of the place reserved for his signature: "I certify that the above stated information is true and correct to the best of my knowledge."
Black's Law Dictionary defines "certification" as the act of attesting, the state of having been attested, or an attested statement. Black's Law Dictionary, 220 (7th ed.1999). To "attest" is to bear witness, affirm to be true or genuine, or to authenticate by signing as a witness. Black's Law Dictionary, 124 (7th ed.1999). To "acknowledge" is defined as recognizing something as being factual, to show that one accepts responsibility or to confirm as genuine before an authorized officer. Black's Law Dictionary, 23 (7th ed.1999). In contrast, "consent" means an "agreement, approval, or permission as to some act or purpose, especially given voluntarily by a competent person." Black's Law Dictionary, 300 (7th ed.1999).
Thus, according to the general prevailing meaning of the terms used and considering that the documents expressly outline the construction to be given Sanders' signature thereon,[3] we cannot say that the trial court clearly erred in finding that Sanders did not intend to consent to Quinton's surname being "Silverthorn" when he signed the affidavit of paternity and the certificate of live birth. The parol evidence introduced at trial further supports this finding by the trial court.
Sanders testified that because of the premature birth of Quinton and the precarious state of both Silverthorn's and Quinton's health immediately following the birth, he did not protest Quinton's surname being registered as "Silverthorn" at the time he signed the affidavit of paternity *524 and certificate of live birth. On at least two occasions after signing those documents, and prior to the filing of the petition for name change, Sanders attempted to broach the subject of changing Quinton's surname without success. When questioned about the delay in filing the petition for name change, Sanders testified that he feared that Silverthorn would flee with the child.
Based on our review of the testimony and the plain language of the affidavit of paternity and the certificate of live birth, we agree with the trial court that the evidence does not support Silverthorn's contention that by signing the documents in question, Sanders agreed to give Quinton the surname of Silverthorn. We therefore reject this allegation of error.

Res Judicata
In her fourth assignment of error, Silverthorn contends that the trial court erred in overruling her peremptory exception raising the objection of res judicata. Prior to filing the petition for name change, Sanders instituted proceedings to establish visitation and custody by filing a petition on June 19, 2000, and a subsequent rule on August 10, 2000. Silverthorn therefore argues that Sanders' failure to join the issue of changing Quinton's surname with his demands for visitation and custody should have precluded him from bringing the action separately.
Under La R.S. 13:4231, res judicata bars relitigation of a subject matter arising from the same transaction or occurrence as a previous suit. See also La. C.C.P. art. 425(a). Thus, the chief inquiry is whether the second action asserts a cause of action that arises out of the transaction or occurrence that was the subject matter of the first action. Stroscher v. Stroscher, 01-2769, p. 6 (La.App. 1 Cir. 2/14/03), 845 So.2d 518, 525. Although both the petition for custody and visitation and the petition for name change involve the same parties and the minor child, the subject matter of the two suits were not the same. As denoted by the title of each suit, the first suit involved issues of custody and visitation, whereas the second suit solely concerns the application of La. R.S. 40:34(B)(1)(a)(iv) and La. R.S. 13:4751 as those statutes govern the rights of the parties to name the minor child. The custody decree was not relevant to a determination of the request for name change,[4] nor does the decision on the request for name change have any bearing on a determination of issues of custody and visitation. Thus, we find that the trial court did not err in overruling the exception.

Laches
Silverthorn also alleges that Sanders' suit to change the surname of the minor child should be barred based on the doctrine of laches.[5] Quinton was twenty-seven months old at the time Sanders filed his petition for change of name. However, *525 under La. C.C.P. art. 1005, laches would be considered an affirmative defense that must be specially pleaded; and if not so pleaded in the trial court, it cannot be considered on appeal. Harris Paint Company v. Quinn Construction Company, Inc., 282 So.2d 543, 545 (La.App. 4 Cir. 1973). Silverthorn failed to raise the defense of laches in any of the pleadings filed with the trial court; therefore, we reject this assignment of error.

Authority of Designated Domiciliary Parent
In her sixth assignment of error, Silverthorn contends that as the person designated the domiciliary parent in the consent judgment establishing the parties' joint custody of the minor child, and pursuant to the authority granted such parent under the provisions of La. R.S. 9:335(B), the trial court erred in failing to recognize that the authority to designate the surname of the minor child rested with her. La. R.S. 9:335(B) provides, in pertinent part, that the "domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent."
In asserting this argument, Silverthorn fails to take into account the express provisions of La. R.S. 40:34(B)(1)(a)(iv). To the extent that Silverthorn would have the court interpret the two statutes in such a manner as to conflict, we note that it is well established that where two statutory provisions are in conflict, the statute that is more specific must prevail as an exception to the general statute. El Chico Restaurants of Louisiana, Inc. v. Louisiana Gaming Control Board, 01-0205, p. 6 (La.App. 1 Cir. 12/20/02), 837 So.2d 641, 645. Since La. R.S. 40:34(B)(1)(a)(iv) specifically addresses the issue of who has the authority to select the surname of the minor child, as compared to the more general authority granted a domiciliary parent under La. R.S. 9:335(B) to make major decisions regarding the child, we conclude that the provisions of La. R.S. 40:34(B)(1)(a)(iv) should prevail. Accordingly, we find no merit in Silverthorn's arguments regarding this assignment of error.

Constitutionality of La. R.S. 40:34(B)(1)(a)(iv) and La. R.S. 13:4751(C)(4)
Under Louisiana law, statutes are presumed to be constitutional, so when a case can be decided on other grounds, courts should refrain from reaching or determining the constitutionality of legislation unless, in the context of a particular case, the resolution of this issue is essential to the decision of the case or controversy. In re Pitre, 93-2322 (La.1/14/94) 630 So.2d 700, 701; Bel v. State Farm Mutual Automobile Insurance Company, 02-0360, p. 7 (La.App. 1 Cir. 2/14/03), 845 So.2d 459, 463, writ denied, 03-0734 (La.5/30/03), 845 So.2d 1058. Based on our resolution of the other assignments of error raised by Silverthorn, we now consider her final assignment of error that La. R.S. 40:34(B)(1)(a)(iv) is unconstitutional because the alleged paternal preference expressed in the statute denies her equal protection under the law.
Both the federal and state constitutions guarantee citizens equal protection under the law.
Amendment XIV, § 1 of the United States Constitution:
Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State *526 wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
Article 1, § 3 of the Louisiana Constitution:

§ 3. Right to Individual Dignity
Section 3. No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.
Article 1, section 3 of the Louisiana Constitution has been interpreted as giving the citizens of Louisiana greater equal protection rights than those provided under the Fourteenth Amendment. Louisiana Associated General Contractors, Inc. v. State Through Division of Administration, Office of State Purchasing, 95-2105, p. 14 (La.3/8/96), 669 So.2d 1185, 1196. Thus, in considering Silverthorn's challenge to the constitutionality of La. R.S. 40:34(B)(1)(a)(iv), we will focus our consideration of Silverthorn's equal protection challenge to an analysis under the provisions of the state constitution.
Proper analysis of an equal protection challenge under La. Const. art. I, § 3 depends on the type of classification. Jurisprudence has held that La. Const. art. I, § 3 provides different levels of scrutiny based on whether the legislative classification of individuals is by: (1) race or religious beliefs; (2) birth, age, sex, culture, physical condition, or political ideas or affiliations; or (3) any other basis. Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094, 1107 (La.1985). For a claim of gender discrimination, such a classification is considered a prima facie denial of equal protection and the ordinary presumption that statutes are constitutional no longer applies. Moore v. RLCC Technologies, Inc., 95-2621, p. 9 (La.2/28/96), 668 So.2d 1135, 1140. The burden of proof in such cases is shifted to the proponent of the classification and the standard of review is heightened, requiring the proponent to establish that the classification substantially furthers an important governmental interest. Moore, 95-2621 at 9-10, 668 So.2d at 1140-1141.
As an initial observation, we note that the trial court in this matter legally erred in applying the lesser standard of review of whether the statute is rationally related to an espoused governmental interest. In applying the correct standard of review, we find that La. R.S. 40:34(B)(1)(a)(iv) does substantially further an important governmental interest. Due to the large number of children born outside of marriage in Louisiana and the cost incurred by the State in establishing paternity and collecting child support,[6] the State has an important interest in increasing the number of fathers who acknowledge and *527 support their children, thus reducing the costs borne by the State. La. R.S. 40:34(B)(1)(a)(iv)'s requirement that a father of a child born outside of marriage acknowledge the child and agree to a plan of support before being listed on the birth certificate and giving the child his last name substantially furthers that interest.

CONCLUSION
Accordingly, we affirm the trial court's judgment. All costs of this appeal are assessed to appellant, Persephanie Silverthorn.
AFFIRMED.
GUIDRY, J., dissents and assigns reasons.
GUIDRY, J., dissenting.
I disagree with the conclusion reached by the majority finding La. R.S. 40:34(B)(1)(a)(iv) to be constitutional, as I am not convinced that the statute substantially furthers the important governmental interest articulated by the majority. The majority points out that in the year 2000, 46 percent of all births in Louisiana occurred outside of marriage and that it costs the state of Louisiana nearly $17,000 a year for support enforcement services to establish paternity and collect child support. Yet, the record is devoid of any evidence proving that the enactment of La. R.S. 40:34(B)(1)(a)(iv) has caused any notable increase in the number of unwed fathers coming forward to acknowledge and support their children born out of wedlock. In other words, there has been no "showing" that the espoused governmental interest was substantially furthered by the enactment of La. R.S. 40:34(B)(1)(a)(iv).[1]See Manuel v. State, 95-2189, p. 16 (La.3/8/96), 692 So.2d 320, 345 (on rehearing); Demars v. Natchitoches Parish School Board, 98-1963, pp. 5-7 (La.App. 3rd Cir.6/2/99), 741 So.2d 786, 789-790, writ denied, 99-1927 (La.10/8/99), 751 So.2d 225.
In fact, as Sanders himself testified, there is no evidence in the record before us to indicate that the provisions of La. R.S. 40:34(B)(1)(a)(iv) have been used by officials of this state to encourage unwed fathers to come forward to acknowledge and support their children. At trial, Sanders, an attorney licensed to practice in this state, testified that he was unaware at the time of Quinton's birth that La. R.S. 40:34(B)(1)(a)(iv) existed or that it gave him the right to choose Quinton's surname. Likewise, he testified that the provisions of the statute did not cause him to sign the affidavit of paternity or to provide support for his child. It is equally noteworthy that while both the Acknowledgement of Paternity Affidavit and the certificate of live birth provide a detailed listing of the rights and responsibilities flowing from the execution of the affidavit by the father, no mention is made the naming rights granted an unwed father.
Thus, based on the record before us, I find that Sanders failed to make the requisite evidentiary showing to prove that the statute in question actually advances the governmental interest espoused. Accordingly, I believe La. R.S. 40:34(B)(1)(a)(iv) is unconstitutional and therefore I respectfully dissent from the majority opinion rendered herein.
NOTES
[1] See Fontenot v. Noble, 00-0618, p. 6 (La. App. 1 Cir. 5/11/01), 786 So.2d 335, 340, writ denied, 01-2041 (La.10/26/01), 799 So.2d 1155. By Acts 2003, No. 1239, § 1, effective July 7, 2003, La. R.S. 40:34(B)(1)(a)(iv) was amended and now provides:

If the child is an illegitimate child as provided in Civil Code Article 180, the surname of the child shall be the mother's maiden name. If the natural father is known and if both the mother and the natural father agree, the surname of the child may be that of the natural father or a combination of the surname of the natural father and the maiden name of the mother. For purposes of this Item, "natural father" means a father whose child has been legitimated by subsequent marriage of the parents or by notarial act, or a father who has formally acknowledged his illegitimate child or who has been judicially declared the father in a filiation or paternity proceeding.
However, for the purpose of this appeal, all references to La. R.S. 40:34(B)(1)(a)(iv) made hereafter in this opinion specifically refer to the statute prior to the 2003 amendment.
[2] The record on appeal does not contain the actual exhibits, including the Acknowledgement of Paternity Affidavit and Certificate of Live Birth, introduced at trial, but copies of these documents appear in the bound record.
[3] The notice on the back of the affidavit of states, among other things, that when properly completed and signed, the man becomes the legal father of the child and his name is added to the child's birth certificate. It also states that the acknowledgement has the same effect as a court order establishing paternity, can be used as a basis for granting an order of child support, and assists the child in receiving benefits such as for inheritance and survivorship.
[4] As the trial court found and both parties agreed, the parties agreed to a plan of support prior to the rendering of the consent judgment; therefore, the award of child support in the consent decree was not instrumental to a determination of whether the requirements of La. R.S. 40:34(B)(1)(a)(iv) had been met.
[5] Two elements must be proved by a defendant in order to establish that a plaintiff is guilty of laches: (1) unreasonable delay on the part of the plaintiff in filing suit and (2) harm that would be suffered by a defendant or a third party resulting from defendant's or a third party's actions based on reasonable assumption, occasioned by the delay, that plaintiff would not seek further legal redress. Jordan v. Sutton, 401 So.2d 389, 393 (La.App. 1 Cir.1981) (on rehearing). Mere delay in enforcement alone is not sufficient. Commercial National Bank in Shreveport v. Keene, 561 So.2d 813, 816 (La.App. 2 Cir.1990).
[6] According to the Department of Health and Hospitals, Office of Public Health, Louisiana State Center for Health Statistics, forty-six percent of all births in Louisiana in 2000 occurred outside of marriage. Support enforcement services involving the establishment of paternity and the collection of child support cost the State approximately $17,000,000 per year, according to the Louisiana Department of Social Services, Support Enforcement Services.
[1] As noted in the majority, La. R.S. 40:34(B)(1)(a)(iv) was amended in 2003 removing the preference granted to fathers of children born out of wedlock.