715 So.2d 47 (1998)
Rodney REVERE
v.
Patrick J. CANULETTE, et al.
No. 97 CA 0552.
Court of Appeal of Louisiana, First Circuit.
May 15, 1998.
*49 Rodney Revere, Angola, Plaintiff-Appellant, in pro. per.
Margaret H. Kern, Covington, for Defendants-Appellees Patrick J. Canulette, et al.
Richard P. Ieyoub, Angie Rogers Laplace, Baton Rouge, for Defendant-Appellee State of Louisiana.
Before GONZALES, PARRO and GUIDRY, JJ.
GONZALES, Judge.
This is an appeal by plaintiff, Rodney Revere, from a judgment in three consolidated cases, dismissing plaintiff's petitions for writs of mandamus and civil penalties.

FACTS AND PROCEDURAL HISTORY

Request for Personnel Records
By letter dated February 22, 1993, plaintiff requested that the St. Tammany Parish Sheriff's Office (the Sheriff's Office) provide him with the termination or retirement records or forms for Kenneth Savignol, a former officer of the Sheriff's Office, and for Guy LeBlanc, Jr., a former detective in the Sheriff's Office, along with the department policy regarding the inventory of vehicles. This request was denied by the Sheriff's Office via letter dated March 2, 1993. On April 20, 1993, plaintiff filed an application for writ of mandamus requesting that the sheriff of St. Tammany Parish (defendant) be required to provide plaintiff with the requested information. On April 30, 1993, the trial court denied that request, but the ruling was reversed on appeal and remanded for a contradictory hearing.
Initially, this matter was mistakenly filed in the criminal proceeding against the plaintiff by the State of Louisiana. However, by court order dated September 6, 1994, the matter was transferred to the civil division of the Twenty-Second Judicial District Court and was subsequently allotted civil docket number 94-13866-E. The matter was heard on February 13, 1995, and the trial court *50 rendered a judgment on February 22, 1995, granting plaintiff's request for access to the public records. On March 27, 1995, plaintiff filed a motion for new trial, which the trial court denied. On May 11, 1995, plaintiff filed a writ application with this court. The writ application was denied on the grounds that the February 22, 1995 judgment was a final, appealable judgment. Revere v. James, 95-0991 (La.App. 1st Cir. 6/2/95). Thereafter, no appeal was taken by either plaintiff or defendant.

Request for Photographs
By letters dated January 9, 1995, and January 31, 1995, plaintiff requested from the Sheriff's Office copies of photographs or access to the public records to make copies of photographs related to the criminal case against him. The Sheriff's Office responded to the request with a letter dated February 17, 1995, informing plaintiff of the cost associated with making prints of the negatives and asking plaintiff to inform them of the number of prints he wished to obtain. Plaintiff responded that the cost estimate was not a "reasonable fee" and asked that the Sheriff's Office provide him with a copy of the negatives within five days or he would file suit to obtain the records. By letter dated March 15, 1995, an attorney for the Sheriff's Office informed plaintiff that, in order to preserve the chain of custody, negatives could only be printed by their lab, the charge quoted to him was reasonable, and, as a cost saving measure, he was welcome to send a representative to review the investigative file to determine which photographs he actually needed.
On August 7, 1995, plaintiff filed a pleading entitled "PETITION FOR COMPLIANCE WITH LSA R.S. 44:1 ET SEQ. WITH RULE AS MANDATED UNDER LAW," naming Patrick J. Canulette, the Sheriff of St. Tammany Parish, as defendant.[1] In the petition, plaintiff alleged that the sheriff's failure to provide him with photographs taken during the initial investigation of the criminal case against him, copies of the photographs, or a reasonable fee for making the copies of the photographs, was a violation of La. R.S. 44:1 et seq. (the Public Records Act). This action was assigned civil docket number 95-13040-D.

Request for Radio Logs
In November 1995, plaintiff requested copies of radio logs from the Sheriff's Office. On November 15, 1995, plaintiff received a response informing him that the logs were not public records. On December 18, 1995, plaintiff filed a pleading with a caption similar to the August 7, 1995 pleading, naming Patrick J. Canulette, the Sheriff of St. Tammany Parish, as defendant. In the petition, plaintiff alleged that the sheriff's failure to provide him with copies of "radio logs" was a violation of the Public Records Act. This action was assigned civil docket number 95-14940-C.
On October 31, 1995, defendant filed a supplemental answer to plaintiff's petition, claiming that it was not required to provide the radio logs to plaintiff under 1995 La. Acts No. 653, effective August 15, 1995 (codified as La. R.S. 44:31.1). Also, on October 31, 1995, defendant filed a motion to consolidate civil docket number 95-13040-D with civil docket number 94-13866-E. The motion was granted.
On July 11, 1996, defendant filed a motion to consolidate civil docket number 95-14940-C with 94-13866-E and 95-13040-D, which motion was granted on the same day. On September 23, 1996, plaintiff filed a pleading entitled "MOTION TO OBJECT TO CONSOLIDATIONAND OBJECTION TO IMPROPER NOTIFICATION AND JUDICIAL PROCEDURE." In this pleading, plaintiff objected to the consolidation of 95-13040-D and 95-14940-C with 94-13866-E because "94-13866 was finalized and defense counsel took no appeal. That is a final judgment and the case is closed." Plaintiff also argued that he was not served with notice of *51 the motion to consolidate and did not participate in the proceedings. Also, on September 23, 1996, plaintiff filed a "Memorandum in Support of Petition to Declare Act 653 Unconstitutional," challenging the constitutionality of La. R.S. 44:31.1.
On December 27, 1996, the trial court signed a judgment, determining that La. R.S. 44:31.1 is constitutional and dismissing plaintiff's petitions with prejudice. Plaintiff now appeals.

ASSIGNMENTS OF ERROR
On appeal, plaintiff asserts three assignments of error, which raise the following issues:
1. Whether La. R.S. 44:31.1, as applied in this case, is an unconstitutional violation of plaintiff's equal protection and due process rights guaranteed under the United States and Louisiana constitutions;
2. Whether the trial court erred in consolidating plaintiff's suit filed under Docket Number 94-13866, in which a final judgment had previously been rendered, with the suits filed under Docket Numbers 95-13040 and 95-14940; and
3. Whether it was error for the trial court to apply La. R.S. 44:31.1 to those suits that were filed prior to August 15, 1995, the effective date of the statute.

ASSIGNMENT OF ERROR NUMBER ONE
Plaintiff argues that La. R.S. 44:31.1[2] violates Article I, Section 3 and Article XII, Section 3 of the Louisiana Constitution. He also argues that La. R.S. 44:31.1 violates his rights of access to the courts, equal protection and due process guaranteed by the United States Constitution.

Louisiana Constitution
Article I, Section 3 of the Louisiana Constitution provides, in pertinent part:
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations.
This provision provides the same protection (together with some additional protections) of the rights of individual citizens, as does the United States Constitution. This guarantee mandates that state laws affect alike all persons and interests similarly situated. State v. Brown, 94-1290 (La.1/17/95), 648 So.2d 872, 876.
If a law classifies individuals on any basis other than those specifically enumerated in Article I, Section 3 of the Louisiana Constitution, the law will be upheld unless a member of the disadvantaged class shows the law does not suitably further any appropriate state interest. Parker v. Cappel, 500 So.2d 771, 774 (La.1987).
The recent Louisiana Supreme Court case of Moore v. RLCC Technologies, Inc., 95-2621 (La.2/28/96), 668 So.2d 1135, contains a detailed discussion of the analysis to be applied in equal protection cases. In Moore, the plaintiff, the widow of a worker who was killed while working for a statutory employer, challenged the exemption of statutory employers from wrongful death suits as a violation of the equal protection clause. The Court first discussed each type of protection provided by each sentence of Article 1, Section 3 as follows:

*52 The first three sentences in Section 3 establish different levels of review or scrutiny of the Legislature's actions. The first sentence sets forth a general rule against discrimination and empowers the courts to expand the equal protection guarantee to other types of classifications besides those expressly enumerated thereafter. The second sentence uses absolute language, permitting no discrimination with respect to race or religion. The third sentence prohibits arbitrary, capricious or unreasonable discrimination with respect to six enumerated classifications, but provides no express guidance as to the appropriate level of review. Lee Hargrave, The Louisiana State Constitution, A Reference Guide 24 (1991).
The third sentence of Section 3 was addressed in Sibley v. Board of Supervisors of La. State Univ., Agriculture and Mechanical College, 477 So.2d 1094 (La. 1985). In Sibley, this court held that a legislative classification between medical malpractice victims with slight or medium class injuries, who were entitled to full recovery of damages, and seriously injured medical malpractice victims, who were only entitled to recover a limited portion of their damages, constituted classification based on physical condition. Accordingly, this court held that when such a classification is under review, the classification itself presents a prima facie case of unconstitutionality, and the burden is on the proponents of the statute to prove that the legislative classification substantially furthers an important governmental objective.
La. Const. art. I, § 3 thus sets up a spectrum for analyzing equal protection challenges based on legislative classifications. At one extreme are laws that classify individuals based on race or religious beliefs. Such laws are repudiated completely.
In the middle of the spectrum are laws that fall within the express prohibition set forth in the third sentence of La. Const. art. I, § 3, which limits the Legislature's power to classify individuals based on the six enumerated grounds. When a statutory classification is based on any of these enumerated grounds, the classification is a prima facie denial of equal protection. Because the ordinary presumption that statutes are constitutional no longer applies, there is a reversal of the ordinary placement of the burden of proof on the party asserting unconstitutionality. The burden is shifted to the proponent of the classification and the standard of review is heightened, requiring the proponent to establish that the classification substantially furthers an important governmental objective.
At the other end of the spectrum are laws that do not classify individuals on any of the enumerated bases. These laws are subject to the minimal standard of scrutiny for every statutory classificationthat is, the classification must be rationally related to a legitimate governmental purpose. Whenever a person disadvantaged by a legislative classification not enumerated in Section 3 seeks to have the classification declared unconstitutional, that person has the stringent burden of demonstrating that the classification does not suitably further any appropriate governmental interest.
Moore v. RLCC Technologies, Inc., 668 So.2d at 1140-41.
The Court also discussed the inquiry necessary to properly analyze an equal protection case, as follows:
In order to analyze an equal protection challenge, it is helpful to make three basic inquiries. The first inquiry involves identifying the challenged classification. The classification means the distinction made between one group and another or the basis on which one group is treated differently from another.... The second inquiry involves identifying the person who suffers the discrimination.... The third inquiry involves determining the Legislature's purpose for the classification. On this issue, the placement of the burden of proof is critical. As discussed above, the placement of the burden of proof and the determination of the appropriate level of scrutiny depends on where the challenged classification falls in the spectrum for analyzing equal protection challenges under La. Const. art. I, § 3. *53 Moore v. RLCC Technologies, Inc., 668 So.2d at 1141-42.
Plaintiff claims that heightened scrutiny should be used in this case because prisoners fall under the classification of "physical condition" under Article I, Section 3 of the Louisiana Constitution. We disagree. "Physical condition" refers to classifications on the basis of one's health or handicap. See, e.g., Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094 (La.1985) (on rehearing); Cook v. New Orleans Police Department, 94-2490 (La. App. 4th Cir. 7/26/95), 659 So.2d 530.
Because none of the enumerated classes are involved, the classification created by La. R.S. 44:31.1 is subject to the minimal standard of scrutinythat is, the classification must be rationally related to a legitimate governmental purpose. Armstead v. Phelps, 449 So.2d 1049, 1053 (La.App. 1st Cir.1984). The law is presumed constitutional, and plaintiff has the burden of proving that the classification does not suitably further any appropriate governmental interest.
Applying the rational relationship standard to this case, we find a rational basis exists for the classification under La. R.S. 44:31.1 of inmates who have exhausted their appellate remedies and have not demonstrated that the public records request is for the purpose of filing for post-conviction relief. The legislature could have reasonably determined that the numerous requests by inmates for copies of matters in the public records have a detrimental effect on the effective and efficient upkeep of the public records, particularly when these requests are for unnecessary documents. In its endeavor to assure the custodian's efficiency and effectiveness, the statute does not limit an inmate's access to those records necessary for meaningful access to the courts in connection with the appeals process. Therefore, we conclude that the statute is rationally related to the legitimate state interest of maintaining and preserving the integrity of the public records.
Plaintiff has not proven that the state has no appropriate governmental interest. Thus, because the plaintiff has not sustained his burden of proof, we hold that the trial court was correct in determining that La. R.S. 44:31.1, as applied to civil docket number 95-14940-C, is not an unconstitutional violation of Article I, Section 3 of the Louisiana Constitution.
Article XII, Section 3 of the Louisiana Constitution prohibits the denial of a person's right to examine public documents.[3] This prohibition, however, is not absolute and unqualified. This same section provides for exceptions in cases established by law. Louisiana Revised Statute 44:31.1 is one such exception. For an example of another exception, see DeSalvo v. State, 624 So.2d 897 (La.1993), cert. denied sub nom. DeSalvo v. Louisiana, 510 U.S. 1117, 114 S.Ct. 1067, 127 L.Ed.2d 386 (1994).
Generally, laws are presumed to be constitutional, and where possible, this court should give such laws an interpretation of constitutionality. Moore v. RLCC Technologies, Inc., 668 So.2d at 1140; Kansas City Southern Railway Co. v. Louisiana Tax Commission, 95-2319 (La.App. 1st Cir. 6/28/96), 676 So.2d 812, 822. As previously stated, Article XII, Section 3 provides for exceptions to the right of access to public records. The purpose of the Public Records Act is to keep the public reasonably informed, while at the same time balancing the public's right of access against the public interest of protecting and preserving the public records against unreasonable dangers of loss or damage, or acts detrimental to the integrity of the public records.
We believe that La. R.S. 44:31.1 gives an inmate the right to examine any public record (and to copy or receive a copy thereof in a reasonable manner) relevant to any post-conviction relief he is entitled to seek.[4] At *54 the same time, the statute strikes a reasonable balance between the inmate's right of access to the public records and the custodian's obligation to effectively and efficiently preserve the integrity of the public records.

United States Constitution
With respect to the United States Constitution, plaintiff first argues that the denial of access to the radio logs under La. R.S. 44:31.1 was a violation of his right of access to the courts.[5]
It is true that prisoners have a constitutional right of adequate, effective, and meaningful access to the courts to petition the government for redress of grievances. Bounds v. Smith, 430 U.S. 817, 821, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977). This right, however, apparently does not extend to all legal filings, but applies only to presentation of constitutional claims, such as civil rights complaints and state and federal habeas petitions. Morrow v. Harwell, 768 F.2d 619, 623 (5th Cir.1985). The appropriate inquiry is whether La. R.S. 44:31.1 violates plaintiff's right of access to the courts by denying him access to documents or information needed to give him a reasonably adequate opportunity to present claimed violations of constitutional rights to the courts.
We conclude that the statute does not deny plaintiff the necessary access. The very language of the statute excludes from its application any felony inmate except those seeking copies of public records upon grounds for which the inmate could file for post conviction relief. However, the record demonstrates plaintiff has exhausted his appellate remedies. According to the record, plaintiff has no further need for the requested information with respect to matters for which the right of access is intended. Furthermore, nothing prevents plaintiff from having a representative make a personal appearance at the office of the public records custodian to inspect and copy the records he seeks.
Plaintiff also argues that La. R.S. 44:31.1 is a violation of the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution.[6]
The Equal Protection Clause allows the States considerable leeway to enact legislation that may appear to affect similarly situated people differently. Legislatures are ordinarily assumed to have acted constitutionally. Under traditional equal protection principles, distinctions need only be drawn in such a manner as to bear some rational relationship to a legitimate state end. Classifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them. [The Supreme Court] ha[s] departed from traditional equal protection principles only when the challenged statute places burdens upon "suspect classes" of persons or on a constitutional right that is deemed to be "fundamental."
Clements v. Fashing, 457 U.S. 957, 962-63, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982) (citations omitted).
With respect to the due process clause, the United States Supreme Court has stated that "the judiciary may not sit as a *55 superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976). A state is free to enact laws to protect against what are found to be injurious practices in its internal commercial and business affairs, so long as the laws do not run afoul of some specific federal constitutional prohibition, or of some valid federal law. Ferguson v. Skrupa, 372 U.S. 726, 730-31, 83 S.Ct. 1028, 1031, 10 L.Ed.2d 93 (1963). If the regulation has a rational relationship to the state's objective, the law does not violate the due process clause of the United States Constitution. Williamson v. Lee Optical, Inc., 348 U.S. 483, 491, 75 S.Ct. 461, 466, 99 L.Ed. 563 (1955); State v. Brown, 648 So.2d at 877.
Because no suspect classification,[7] federally recognized fundamental right, or federal constitutional provision is involved, we review La. R.S. 44:31.1 under the rational basis standard. We believe the statute rests on a rational predicate. This provision furthers the state's interest in maintaining the integrity of the public records and facilitating the efficient and effective preservation of the public records. By limiting the number of requests to which the custodian of the public records must respond, particularly in those situations when the information requested is not needed by the inmate for purposes of seeking post-conviction relief, the statute seeks to ensure that an inmate receives all the information necessary to facilitate his right of access to the courts for redress of grievances, while at the same time reducing the volume of repetitive and unnecessary requests. Thus, we conclude that the denial of plaintiff's claims in 95-14940-C under La. R.S. 44:31.1 is not a violation of either the equal protection clause or due process clause of the Fourteenth Amendment to the United States Constitution.

ASSIGNMENT OF ERROR NUMBER TWO
On appeal, plaintiff argues that consolidation of civil docket number 94-13866-E with civil docket numbers 95-13040-D and 95-14940-C was improper because the trial court had previously rendered a final judgment in civil docket number 94-13866-E. We agree.
On September 23, 1996, plaintiff filed a pleading entitled "MOTION TO OBJECT TO CONSOLIDATIONAND OBJECTION TO IMPROPER NOTIFICATION AND JUDICIAL PROCEDURE." In the pleading, plaintiff argued that consolidation was improper because a final judgment had been rendered in civil docket number 94-13866-E and the defendant had not taken an appeal from that judgment. Plaintiff also argued that he had not been served with the motion to consolidate and was not given an opportunity to be heard prior to the consolidation. Plaintiff urges this argument again on appeal.
The peremptory exception of res judicata may be pleaded at any stage in the proceeding in the trial court prior to a submission of the case for a decision. La. C.C.P. art. 928(B). Pursuant to La. C.C.P. art. 865, we are required to construe every pleading as to do substantial justice. Fox v. National Gypsum, Inc., 96-25 (La.App. 5th Cir. 4/30/96), 673 So.2d 1223, 1227. Although plaintiff's pleading is not labeled as an exception of res judicata, we conclude that the exception of res judicata was sufficiently *56 raised before the trial court in plaintiff's objection to the consolidation.
We next turn to the question of whether the trial court should have sustained the exception of res judicata. A contradictory hearing was held on February 13, 1995. The trial court rendered a judgment in the matter on February 22, 1995, granting plaintiff's request for access to the public records. This constituted a decision on the merits and was a final judgment. Moreover, this court recognized the judgment as a final, appealable judgment in its denial of plaintiff's writ application regarding the plaintiff's motion for new trial. See Revere v. James, 95-0991 (La.App. 1st Cir. 6/2/95). Therefore, we conclude that the consolidation of civil docket number 94-13866-E was improper because the matter became final when no appeal was taken from the February 22, 1995 judgment.[8]

ASSIGNMENT OF ERROR NUMBER THREE
Plaintiff next argues that La. R.S. 44:31.1, which was enacted by 1995 La. Acts No. 653, and which became effective August 15, 1995, is substantive in nature. Thus, according to plaintiff, La. R.S. 44:31.1 should not be applied retroactively to the actions that he filed prior to the statute's August 15, 1995 effective date.
The general rule regarding retroactivity of laws is codified in La. C.C. art. 6, which provides as follows:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
Although La. R.S. 1:2, which provides that "[n]o section of the Revised Statutes is retroactive unless it is expressly so stated," appears to conflict with La. C.C. art. 6, La. R.S. 1:2 has been limited to apply only to substantive and not to procedural or interpretive legislation. Sudwischer v. Estate of Huffpauir, 97-0785 (La.12/12/97), 705 So.2d 724, 728.
Accordingly, in determining whether the definition of "person" contained in La. R.S. 44:31.1 is to be applied retroactively, we must engage in the following two-part inquiry:
The first step involves determining whether the Legislature expressed an intent concerning the retroactive or prospective application of the law. If the Legislature expressed such an intent, the process is at an end and the law must be characterized as the Legislature intended. However, if no intent is expressed by the Legislature, we must discern the Legislature's intent and classify the law as either substantive, procedural, or interpretative.
Sudwischer v. Estate of Hoffpauir, 705 So.2d at 728; see Manuel v. Louisiana Sheriff's Risk Management Fund, 95-0406 (La.11/27/95), 664 So.2d 81, 86.
The Legislature did not express an intent concerning the retroactive or prospective application of La. R.S. 44:31.1. Thus, we must classify the law as either substantive, procedural, or interpretive. Substantive laws are laws that impose new duties, obligations, or responsibilities upon parties, or laws that establish new rules, rights, and duties, or change existing ones. Interpretative laws are those which clarify the meaning of a statute and are deemed to relate back to the time that the law was originally enacted. Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of *57 the laws. Sudwischer v. Estate of Hoffpauir, 705 So.2d at 729.
We conclude that the new definition of person in La. R.S. 44:31.1 is procedural in nature. Although the statute limits an inmate's right to obtain public records from the custodian, it does not do away with this substantive right. The limitation, which excludes requests which are not related to post-conviction relief remedies, is a reasonable one, which only limits the right of access in areas which are not useful to an inmate. The statute merely changes the manner in which the substantive right of access to public records is exercised. The inmate still can obtain access to those records by other means.
Accordingly, we find no error in the trial court's retroactive application of La. R.S. 44:31.1 to the actions filed prior to August 15, 1995.[9]

CONCLUSION
For the foregoing reasons, the judgment of the trial court is AFFIRMED with respect to the dismissal of civil docket numbers 95-14940-C and 95-13040-D, and is REVERSED with respect to the dismissal of civil docket number 94-13866-E. The February 22, 1995 judgment with respect to civil docket number 94-13866-E is REINSTATED. Costs of this appeal are assessed equally among the parties.
GUIDRY, J., dissents in part and assigns reasons.
GUIDRY, Judge, dissenting in part.
I respectfully disagree with the portion of the decision which concludes that LSA-R.S. 44:31.1 is procedural in nature. The right of access to the public records is a fundamental right guaranteed by La. Const. art. XII, § 3. Elliott v. District Attorney of Baton Rouge, 94-1804, p. 3 (La.App. 1st Cir. 9/14/95), 664 So.2d 122, 124, writ denied, 95-2509 (La.12/15/95), 664 So.2d 440. LSA-R.S. 44:1 et seq. sets forth the means by which a person may obtain access to the public records. LSA-R.S. 44:31.1 restricts an inmate's access to public records to situations when the inmate's request is limited to grounds upon which the inmate may file for post-conviction relief. State ex rel. Leonard v. State, 96-1889 (La.6/13/97), 695 So.2d 1325.
Prior to the enactment of LSA-R.S. 44:31.1, courts interpreted the Public Records Act as allowing inmates the right of access to public records without limiting the access for a particular purpose. See, e.g., Elliott v. District Attorney of Baton Rouge, 664 So.2d 122. Now, LSA-R.S. 44:31.1 does away with a prisoner's right of access to the public records "who has exhausted his appellate remedies when the request for public records is not limited to grounds upon which the individual could file for post conviction relief under Code of Criminal Procedure Article 930.3." There is nothing in the statute that would allow an inmate, by mail or by representative, to escape the inquiry and denial by the custodian based on the grounds for which he seeks the records. Accordingly, I believe LSA-R.S. 44:31.1 is substantive in nature and must be applied prospectively only. For this reason, I respectfully dissent from the portion of the opinion that concludes that LSA-R.S. 44:31.1 should be applied retroactively and would conclude that the trial court erred in applying LSA-R.S. 44:31.1 retroactively to the actions filed prior to August 15, 1995.
NOTES
[1] Despite its caption, the pleading is in substance an application for a writ of mandamus, since it includes a proposed order requesting the Sheriff be ordered to show cause why he has failed to comply with the Public Records Law at La. R.S. 44:1 et seq., and why sanctions and costs should not be assessed, as provided for under La. R.S. 44:1 et seq. The nature of a pleading is determined by its substance and not its caption. La. C.C.P. art. 865; Revere v. Reed, 95-1913 (La.App. 1st Cir. 5/10/96), 675 So.2d 292, 294 n. 1.
[2] Louisiana Revised Statute 44:31.1 provides:

For the purposes of this Chapter, person does not include an individual in custody after sentence following a felony conviction who has exhausted his appellate remedies when the request for public records is not limited to grounds upon which the individual could file for post conviction relief under Code of Criminal Procedure Article 930.3. Notwithstanding the provisions contained in R.S. 44:32, the custodian may make an inquiry of any individual who applies for a public record to determine if such individual is in custody after sentence following a felony conviction who has exhausted his appellate remedies and the custodian may make any inquiry necessary to determine if the request of any such individual in custody for a felony conviction is limited to grounds upon which such individual may file for post conviction relief under Code of Criminal Procedure Article 930.3.
[3] Article XII, § 3 of the Louisiana Constitution provides:

No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law.
[4] Plaintiff suggests that he should have access to these records because he has filed a petition for habeas corpus relief, which is still pending. However, La. R.S. 44:31.1 specifically limits access to those seeking post-conviction relief under La.C.Cr.P. art. 930.3. Habeas corpus applications do not fall under La.C.Cr.P. art. 930.3; they are governed by the provisions of La.C.Cr.P. arts. 351-370, for which there is no exception in La. R.S. 44:31.1.
[5] Although, as stated above, appellees originally denied plaintiff's request for copies of the radio logs on the basis that the radio logs are not public records, the trial court concluded that La. R.S. 44:31.1 is not unconstitutional and that plaintiff is not entitled to the "alleged public records." Although the trial court did not specifically state the reason that plaintiff is not entitled to copies of the radio logs, we must assume that the basis of the denial of access was La. R.S. 44:31.1. Nevertheless, appellees do not argue on appeal that the radio logs are not public records. Instead, appellees appear to concede for purposes of this appeal that all the information sought by plaintiff is public.
[6] U.S. Const. amend. XIV provides, in pertinent part:

Section 1.... [N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
[7] Classifications based on gender, illegitimacy, race or national origin, and classifications affecting fundamental rights are treated as suspect and are examined under more heightened levels of scrutiny. Gender and illegitimacy classifications are examined under an intermediate standard the classification must have a substantial relationship to an important government interest. See Clark v. Jeter, 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988) (illegitimacy) and Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (gender). Race or national origin classifications and classifications affecting fundamental rights are examined under strict scrutinythe classification must be narrowly drawn to further a compelling state interest. See City of Richmond v. J.A. Croson Co., 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989) (race) and Harper v. Virginia Board of Elections, 383 U.S. 663, 672, 86 S.Ct. 1079, 1084-85, 16 L.Ed.2d 169(1966) (right to vote).
[8] While we are mindful of the Fourth Circuit's decision in Nicholson Management & Consultants, Inc. v. Bergman, 96-0557, 96-0558 (La. App. 4th Cir. 9/25/96), 681 So.2d 471, 475, writ denied, 96-2588 (La. 1/6/97), 685 So.2d 126, in which that court refused to address plaintiffs' argument that the trial court erred in ordering the consolidation of a pending case with a fully adjudicated case because plaintiffs failed to seek supervisory review of the consolidation order, we believe that to hold that a plaintiff has waived a timely filed exception of res judicata by not seeking supervisory writs after the exception was denied by the trial court goes against the policy of not presuming a waiver of rights, which should only be done expressly. See, e.g., Phillips v. Patterson Insurance Co., 97-2748 (La.1/9/98), 704 So.2d 246 (where the supreme court reached a similar conclusion regarding an exception of improper venue).
[9] Although we conclude under this assignment of error that it was proper to retroactively apply La. R.S. 44:31.1 to civil docket numbers 94-13866-E and 95-13040-D, we note that our decision regarding assignment of error number two is dispositive of issues related to civil docket number 94-13866-E.