# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 15-911

JAMES E. BOREN

VERSUS

EARL B. TAYLOR

************

**WRIT ON REMAND FROM LOUISIANA SUPREME COURT
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, DOCKET NO. 15-3311-B
HONORABLE GERARD CASWELL, DISTRICT JUDGE**

************

**JAMES T. GENOVESE
JUDGE**

************

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and James T. Genovese, Judges.

Cooks, J., dissents and assigns written reasons.

**AFFIRMED.**

**Jane Hogan
Hogan Attorneys
309 East Church Street
Hammond, Louisiana 70401
(985) 542-7730
COUNSEL FOR PLAINTIFF/RELATOR:**
     James E. Boren

**Earl B. Taylor**
**District Attorney - Twenty-Seventh Judicial District**
**Alisa Ardoin Gothreaux**
**Assistant District Attorney**
**Post Office Drawer 1968**
**Opelousas, Louisiana 70571-1968**
**(337) 948-0551**
**COUNSEL FOR DEFENDANT/RESPONDENT:**
    **Earl B. Taylor**

**GENOVESE, Judge.**

This case comes before this court pursuant to remand from the Louisiana Supreme Court. Plaintiff/Relator, Attorney James E. Boren (Boren), initially applied for supervisory writs with this court to reverse the judgment of the trial court denying his Petition for Writ of Mandamus and Review following the denial of his public records request to the St. Landry Parish District Attorney's Office. After this court denied Boren's writ, he applied for a writ of review with the Louisiana Supreme Court. Boren's writ to the supreme court was granted, and the case was remanded to us for briefing, argument, and a full opinion. For the reasons that follow, we affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

The instant civil action arises from an underlying criminal matter. Boren was retained by Mr. Stephan Bergeron (Bergeron) to challenge his criminal convictions by filing an application for post-conviction relief. Boren made a written request for public records to the St. Landry Parish District Attorney's Office, asking to inspect and copy any public record pertaining to the 2013 convictions of Bergeron. Earl B. Taylor, made defendant herein and the District Attorney for St. Landry Parish (Taylor), responded to Boren's records request by asking him to state the nature of his relationship to Bergeron, the grounds for post-conviction relief, and to establish that such grounds were not raised on appeal. Boren's response to Taylor was that he was unable to determine whether any grounds for post-conviction relief existed without first being given access to the requested files. He did not list any of the information requested by Taylor. Taylor denied Boren's request on July 24, 2015.

Boren filed a Petition for Writ of Mandamus and Review in the trial court on August 10, 2015, which was denied on August 13, 2015. He then filed a

supervisory writ with this court seeking review of the trial court's ruling. This court denied Boren's writ, finding no error in the trial court's ruling. *Boren v. Taylor*, 15-911 (La.App. 3 Cir. 11/18/15) (unpublished writ).[1] Thereafter, Boren filed a writ of review with the supreme court, which granted the writ and remanded the matter for briefing, oral argument, and a full opinion. *Boren v. Taylor*, 15-2322 (La. 3/14/16) (unpublished writ).

## ISSUES

Boren contends that the trial court erred in denying his application for writ of mandamus and in denying his requests for costs, attorney fees, and damages.

## LAW AND DISCUSSION

Louisiana Constitution Article 12, § 3, provides, "No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law." To effect this constitutional provision, La.R.S. 44:31 was enacted and provides:

> A. Providing access to public records is a responsibility and duty of the appointive or elective office of a custodian and his employees.
>
> B. (1) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter, any person of the age of majority may inspect, copy, or reproduce any public record.
>
> (2) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter, any person may obtain a copy or reproduction of any public record.
>
> (3) The burden of proving that a public record is not subject to inspection, copying, or reproduction shall rest with the custodian.

The foregoing provisions recognize the public's right of access to public records. This constitutional and statutory right is, however, not absolute. Both provisions expressly acknowledge that there are exceptions to the right of access.

---

[1]Cooks, J., dissented with reasons.

The issue before this court is whether Boren's request falls within the exception to the public records act found in La.R.S. 44:31.1. The trial court concluded that it did, and we agree.

Louisiana Revised Statutes 44:31.1 provides:

> For the purposes of this Chapter, person does not include an individual in custody after sentence following a felony conviction who has exhausted his appellate remedies when the request for public records is not limited to grounds upon which the individual could file for post conviction relief under Code of Criminal Procedure Article 930.3. Notwithstanding the provisions contained in R.S. 44:32, the custodian may make an inquiry of any individual who applies for a public record to determine if such individual is in custody after sentence following a felony conviction who has exhausted his appellate remedies and the custodian may make any inquiry necessary to determine if the request of any such individual in custody for a felony conviction is limited to grounds upon which such individual may file for post conviction relief under Code of Criminal Procedure Article 930.3.

This statutory provision, enacted subsequent to the general provisions of the public records law,[2] is a more specific provision which was enacted to address matters of post conviction relief. To limit the "fishing expeditions" of individuals who had exhausted all other remedies, the statute set limiting parameters applicable to certain requests. The statute did so by limiting the definition of "person" so as to exclude "an individual in custody after sentence following a felony conviction who has exhausted his appellate remedies when the request for public records is not limited to grounds upon which the individual could file for post conviction relief under Code of Criminal Procedure Article 930.3." La.R.S. 44:31.1.

Notably, the exclusion of certain "individual[s] in custody" does not provide a blanket prohibition against these individuals having access to public records; rather, such persons' request is limited to particular grounds for post conviction

_____

[2]Louisiana Public Records Law, La.R.S. 44:1 through 44:67.2, was enacted in 1940, and La.R.S. 44:31.1 was added in 1995.

3

relief. Accordingly, when a public records request is made, La.R.S. 44:32(A)[3] allows the custodian of the public record to make inquiry to determine if the restrictive parameters of La.R.S. 44:31 are satisfied.

In the instant matter, there is no dispute that the requested records are public records. Additionally, there is no dispute that the records being requested are for purposes of exploring post conviction relief. Admittedly, Boren is requesting the public records of Bergeron, whose conviction is final and was affirmed on appeal, to investigate potential remedies available to Bergeron by way of post conviction relief. Clearly, Bergeron is an individual whose public records requests would be limited by La.R.S. 44:31.1. What remains in dispute is whether the exception found in La.R.S 44:31.1 also applies to Boren. If applicable, Taylor had the authority to withhold the records due to Boren's failure to list the grounds for post conviction relief delineated in La.Code Crim.P. Art. 930.3.[4] If inapplicable, Boren

---

[3]Louisiana Revised Statutes 44:32(A) provides:

   The custodian shall present any public record to any person of the age of majority who so requests. The custodian shall make no inquiry of any person who applies for a public record, except an inquiry as to the age and identification of the person and may require the person to sign a register and shall not review, examine or scrutinize any copy, photograph, or memoranda in the possession of any such person; and shall extend to the person all reasonable comfort and facility for the full exercise of the right granted by this Chapter; provided that nothing herein contained shall prevent the custodian from maintaining such vigilance as is required to prevent alteration of any record while it is being examined; and provided further, that examinations of records under the authority of this Section must be conducted during regular office or working hours, unless the custodian shall authorize examination of records in other than regular office or working hours. In this event the persons designated to represent the custodian during such examination shall be entitled to reasonable compensation to be paid to them by the public body having custody of such record, out of funds provided in advance by the person examining such record in other than regular office or working hours.

[4]Louisiana Code of Criminal Procedure Article 930.3 provides:

   If the petitioner is in custody after sentence for conviction for an offense, relief shall be granted only on the following grounds:

   (1) The conviction was obtained in violation of the constitution of the United States or the state of Louisiana;

4

has the right of access, and Taylor's failure to produce the records may entitle Boren to costs, attorney fees, and damages, as he requested. La.R.S. 44:35.

Boren maintains that La.R.S. 44:31.1 does not apply to him as he is not an incarcerated individual, in prison with a felony conviction, who has exhausted his appellate remedies. Taylor counters that Boren, an attorney representing Bergeron, is acting in a representative capacity and is not allowed to "wear two hats." Narrowly stated, we must therefore decide whether La.R.S. 44:31.1 applies to an attorney seeking public records on behalf of his client who is not considered a "person" per La.R.S. 44:31.1.

In support of his position, Boren argued in the trial court that if Taylor's argument would prevail, it would produce the absurd consequence that an individual in custody who is seeking post conviction relief would not have the right to retain counsel and get full discovery. The trial court disagreed and recognized that such an interpretation did not preclude retained counsel from obtaining the records. Instead, the court explained that such an individual can retain counsel, "[i]t just means that they need to articulate what grounds they are seeking post-conviction on." In denying Boren's petition, the trial court reasoned:

> [T]he statute was designed to stop a fishing expedition by people who are in custody. I think the statute is designed-- I mean they could

---

(2) The court exceeded its jurisdiction;

(3) The conviction or sentence subjected him to double jeopardy;

(4) The limitations on the institution of prosecution had expired;

(5) The statute creating the offense for which he was convicted and sentenced is unconstitutional; or

(6) The conviction or sentence constitute the ex post facto application of law in violation of the constitution of the United States or the state of Louisiana.

(7) The results of DNA testing performed pursuant to an application granted under Article 926.1 proves by clear and convincing evidence that the petitioner is factually innocent of the crime for which he was convicted.

5

have clearly said it does not apply to an attorney representing such. It doesn't say that. I don't think there's any other way for me . . . to understand how to interpret that, other than to say it applies, and I don't think it's burdensome for an attorney to set forth a ground for post-conviction relief that he's interested in. Now, to say, I don't know if there's any grounds until I look at the file, you have the entire record to determine whether or not there's potential grounds. It is clear that the June 30[th] letter of Mr. Boren, when he requested records, was that he was requesting on behalf of someone in custody. I believe [La.R.S.] 44:31.1 applies. I believe Mr. Boren should have set forth grounds for post-conviction relief once the District Attorney requested that he do so, and as a result, I am going to deny the Petition for Writ of Mandamus and Review.

In reaching its conclusion, the trial court noted that there is no jurisprudence directly addressing this issue. We agree. This court has considered the jurisprudence cited by both parties and finds that none are dispositive of this issue.

Notably, none of the cases relied upon by Boren directly address the issue of whether an attorney can request public records on behalf of an incarcerated client under La.R.S. 44:31.1 without first setting forth grounds for seeking post-conviction relief. Simply because an attorney was allowed access to public records in a district attorney's file does not alone support Boren's argument herein. There is no indication in the cited cases whether the attorney was required to state a reason for his request and to identify the grounds for an application for post-conviction relief. Further, in some instances, the opinions, in fact, predate La.R.S. 44:31.1 and are not instructive for that reason as well.

Taylor, likewise, acknowledges an inability to direct this court to jurisprudence that directly addresses the issue before this court. Discussed in brief is *Revere v. Canulette*, 97-552 (La.App. 1 Cir. 5/15/98), 715 So.2d 47, *writ granted in part*, *denied in part*, 98-1493 (La. 1/29/99), 730 So.2d 870,[5] wherein the court

---

[5]On writs to the supreme court, the majority opinion was reversed on the issue of retroactivity, and the court agreed with Judge Guidry's finding that La.R.S. 44:31.1 is substantive and is a fundamental break from prior law on access to public records. Thus, the matter was remanded to the trial court to determine if the defendant was entitled to access police photographs and radio logs.

6

found that La.R.S. 44:31.1 does not violate the rights provided by the constitution. Primarily, Taylor directs this court to the following language of Judge Guidry, in his dissent, which reads:

> I respectfully disagree with the portion of the decision which concludes that LSA–R.S. 44:31.1 is procedural in nature. The right of access to the public records is a fundamental right guaranteed by La. Const. art. XII, § 3. *Elliott v. District Attorney of Baton Rouge*, 94-1804, p. 3 (La.App. 1st Cir. 9/14/95), 664 So.2d 122, 124, *writ denied*, 95-2509 (La.12/15/95), 664 So.2d 440. LSA–R.S. 44:1 et seq. sets forth the means by which a person may obtain access to the public records. LSA–R.S. 44:31.1 restricts an inmate's access to public records to situations when the inmate's request is limited to grounds upon which the inmate may file for post-conviction relief. *State ex rel. Leonard v. State*, 96-1889 (La.6/13/97), 695 So.2d 1325.
>
> Prior to the enactment of LSA–R.S. 44:31.1, courts interpreted the Public Records Act as allowing inmates the right of access to public records without limiting the access for a particular purpose. *See, e.g., Elliott v. District Attorney of Baton Rouge*, 664 So.2d 122. Now, LSA–R.S. 44:31.1 does away with a prisoner's right of access to the public records "who has exhausted his appellate remedies when the request for public records is not limited to grounds upon which the individual could file for post conviction relief under Code of Criminal Procedure Article 930.3." **There is nothing in the statute that would allow an inmate, by mail or by representative, to escape the inquiry and denial by the custodian based on the grounds for which he seeks the records.** Accordingly, I believe LSA–R.S. 44:31.1 is substantive in nature and must be applied prospectively only. For this reason, I respectfully dissent from the portion of the opinion that concludes that LSA–R.S. 44:31.1 should be applied retroactively and would conclude that the trial court erred in applying LSA–R.S. 44:31.1 retroactively to the actions filed prior to August 15, 1995.

*Revere*, 715 So.2d at 57 (emphasis added). While certainly not dispositive, this language provides some instructional value in its discussion of La.R.S. 44:31.1.

Boren argues that by the terms of the statute, it is inapplicable to him since he is not "an individual in custody after sentence following a felony conviction who has exhausted his appellate remedies[.]" Although this statement is accurate, as Bergeron's legal counsel, Boren is appearing in his representative capacity, and the relationship is one of principal and agent. *Smart Document Solutions, LLC v.*

7

*Miller*, 07-670 (La.App. 3 Cir. 10/31/07), 970 So.2d 49, *writ denied*, 08-210 (La. 3/28/08), 978 So.2d 308.  Indeed, the relationship between an attorney and a client is a unique agency relationship in that the attorney/agent acts more so in the capacity of the principal in matters of litigation.  *Id.*  Certainly, in the criminal context, the United States Supreme Court has stated "'the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation[.]'"  *State v. Thomas*, 10-528, 10-303, 10-529, p. 38 (La.App. 4 Cir. 7/15/10), 54 So.3d 1, 22 (quoting *Vermont v. Brillon*, 556 U.S. 81, 90, 129 S.Ct. 1283, quoting *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546 (1991)).

In this case, Boren, in requesting the public records as legal counsel for Bergeron, was acting in his representative capacity as an agent.  As such, he has no greater rights than those of Bergeron.  Louisiana Revised Statutes 44:31.1 applies to Bergeron and requires that he identify grounds for post conviction relief in making a request for public records; thus, the same requirements must be satisfied by Boren.  Retaining counsel should not enable a defendant to circumvent the provisions of La.R.S. 44:31.1.  This would yield an inequitable result in that those individuals who could afford to retain counsel would be treated differently and would be allowed freer access to the public records sought for purposes of post conviction relief than the individuals who did not have the same financial means.  Additionally, such an interpretation would negate the purpose for the enactment of La.R.S. 44:31.1.

For the foregoing reasons, based upon our de novo review of the record,[6] we find that the trial court did not err in denying Boren's Petition for Writ of

---

[6]"[B]ecause our resolution of this particular issue involves the correct interpretation of a statute, it is a question of law, and reviewed by this court under a de novo standard of review." *Thompson v. Winn-Dixie Montgomery, Inc.*, 15-477, p. 8 (La. 10/14/15), 181 So.3d 656, 663 (citing *Red Stick Studio Dev., L.L.C. v. State ex rel. Dep't of Econ. Dev.*, 10-193 (La. 1/19/11), 56 So.3d 181).

8

Mandamus and Review. Boren is the attorney for Bergeron, and, as his legal representative, the statutory requirements restricting Beregon's access to public records are applicable to Boren. Boren may request the public records in the custody of Taylor, but he must comply with La.R.S. 44:31.1 and identify the post conviction relief grounds for which the records are sought.

Given our conclusion, Boren's remaining issue relative to costs, attorney fees, and damages is moot.

**DECREE**

For the reasons set forth herein, we affirm the judgment of the trial court denying the Petition for Writ of Mandamus and Review on behalf of James E. Boren, and we assess him with the costs of this appeal.

**AFFIRMED.**

JAMES E. BOREN

VERSUS

EARL B. TAYLOR

**Cooks, J., Dissenting.**

Attorney James E. Boren (Boren) made a written request for public records to the St. Landry Parish District Attorney's Office asking to inspect and copy any public record pertaining to the 2013 convictions of Stephan Bergeron (Bergeron). The parties do not dispute the fact that Bergeron's conviction is final. Thus, Bergeron's only avenue to further challenge his conviction is by filing an application for post-conviction relief. The District Attorney responded to Boren's request by asking him to state the nature of his relationship to Bergeron, the grounds for post-conviction relief, and to establish that such grounds were not raised on appeal. Boren responded he could not determine whether any grounds for post-conviction relief existed without first being given access to the requested files. He did not list any of the information requested by the District Attorney. The District Attorney denied Boren's request on July 24, 2015. Boren filed a petition for writ of mandamus and review on August 10, 2015, which was denied on August 13, 2015. Boren filed a writ with this court seeking review of the trial court's ruling. This court denied Boren's writ, finding no error in the trial court's ruling. I dissented with written reasons. *See, James E. Boren v. Earl B. Taylor*, 15-911(La. App. 3 Cir. 11/18/15). Boren filed a writ of review with the Louisiana

State Supreme Court which granted the writ and remanded the matter for briefing, oral argument and a full opinion. *See James E. Boren v. Earl B. Taylor*, 15-2322 (La. 3/14/16). I now urge the same reasoning as I did in my previous dissent.

I first note the illogical consequence of upholding the trial court's and majority's decision in this instance. While the majority holds the attorney could not demand access to these public records because he stands as the legal representative of a convicted felon serving out his sentence, there is no question under the constitutional and statutory provisions applicable herein, a family member of this felon, or anyone else for that matter, could make such a request. But more important than this absurd consequence is the fact that **the Louisiana legislature did not express any intent to extend the limitation found in La.R.S. 44:31.1 to attorneys representing incarcerated inmates.** Louisiana Constitution Article 12, § 3, provides, "No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law." In *Title Research Corp. v. Rausch*, 450 So.2d 933, 936 (La.1984) (emphasis added) the Louisiana State Supreme Court held:

> **The right of the public to have access to the public records is a fundamental right, and is guaranteed by the constitution**. La. Const. art. 12, § 3. **The provision of the constitution must be construed liberally in favor of free and unrestricted access to the records, and that access can be denied only when a law, specifically and unequivocally, provides otherwise.** *Id. Whenever there is doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public's right to see. To allow otherwise would be an improper and arbitrary restriction on the public's constitutional rights.*

Louisiana Revised Statutes 44:31.1 restricts access to public records. Therefore, under the holding in *Title Research*, this restriction must be strictly construed and any doubt as to its meaning "must be resolved in favor" of access.

The majority ignores this mandate and under its liberal interpretation of La.R.S. 44:31.1 judicially creates an exception to the public's right to access information. The statute clearly, and with painstaking precision, limits the exception to "**an individual** in custody after sentence following a felony conviction who has exhausted his appellate remedies." La.R.S. 44:31.1. The language in this statute does not extend its limitation to a *representative* of such "an individual in custody[.]" *Id.* The legislature could easily have done so, but it did not. This court does not enjoy the authority to legislate. The statute expressly and exclusively applies only to the "*individual in custody.*" *Id.* Thus, because Boren is not "an individual in custody after sentence following a felony conviction who has exhausted his appellate remedies," *Id.*, the District Attorney acted improperly by failing to provide the requested documents and demanding the information it sought from Boren. The trial court legally erred in denying the writ of mandamus and the majority errs in usurping legislative authority to create an exception to a constitutional right of Louisiana citizens.

Further, the facts in this case caution against this court's decision to burden the fundamental right to access public records by nothing more than judicial modification of the clear legislative language. At the hearing below, Boren, represented by counsel, asserted he is an attorney in Baton Rouge who frequently does post-conviction work. He argued he must first acquire public records pursuant to the public records act to do post-conviction relief work. Next, he directed the court to his response to the District Attorney on July 21, 2015, wherein he indicated he was retained by Bergeron and could not know the grounds for post-conviction relief until he obtained all the records.

3

The state and the majority maintain there is no jurisprudence which construes La.R.S. 44:31.1 to give an attorney representing a defendant any kind of right outside of the statute. That may be true but it is an irrelevant observation. More relevant is the fact that neither the state nor the majority can cite to any jurisprudence which applies the statutory limitation to a representative of the individual defined in the statute. The state maintains Boren is before the court in his representative capacity and is not allowed to "wear two hats." It further argues that pursuant to La.R.S. 44:31.1, a defendant must have a new issue that falls under La.R.S. 44:31.1, and his representative must articulate that issue. The state further complains the statute does not allow Boren, as Bergeron's representative, to go on a fishing expedition in the District Attorney's file. The hat trick here is not being performed by Boren. Boren's counsel contends if the state's argument stands it would produce an absurd consequence—a person in custody seeking post-conviction relief would not have the right to retain counsel unless that convicted felon could establish a basis for post-conviction relief so his retained attorney could satisfy the state's demands based on its interpretation of La.R.S. 44:31.1. The trial court disagreed with Boren's suggestion, stating the state's interpretation of La.R.S. 44:31.1 did not mean that at all. Instead, the trial court suggested, it simply means counsel must articulate the grounds upon which the defendant is seeking post-conviction relief. Boren urges it is the standard practice of counsel to obtain the district attorney's file, and the file of the arresting agency, to allow a skilled attorney to look through the documents to determine whether grounds for post-conviction relief exist. This, he urges, benefits the system of justice because it reduces baseless, frivolous applications for post-conviction relief. The majority embraces the state's and trial court's rationale and rejects Boren's arguments. I

4

believe the majority's reasoning is flawed and ignores the state supreme court's mandate requiring strict construction of La.R.S. 44:31.1, and indeed leads to absurd consequences.

Moreover, there are many more reasons why applying the majority's rationale in this case to exclude a lawyer's access to the record and the state's file in a given case may keep secret the conduct and evidence that may prove to be material in advancing an incarcerated individual's post-conviction plea. One of the compelling reasons we should not blindly embrace the District Attorney's position now was recently highlighted by the United States Supreme Court in *Foster v. Chatman*, 136 S.Ct. 1737, 578 U.S. ____, 195 L.Ed. 2d 1, (2016). In that case, the high court addressed a claim thirty years in the making. Foster was convicted of capital murder and the Georgia court sentenced him to death. His repeated attempts to attack racial bias in jury selection were rebuffed by the state. Through the Georgia Open Records Act his lawyers obtained copies of the prosecution's file which contained damning evidence proving his sentence to death was obtained by excluding black jurors on the basis of their race. The prosecution's file contained evidence which belied its claims and protestations that the state had not engaged in any racial bias during jury selection. The prosecutor's file contained the following:

(1) Four copies of the jury venire list. On each copy, the names of the black prospective jurors were highlighted in bright green. A legend in the upper right corner of the lists indicated that the green highlighting "represents Blacks." See, *e.g.,* App. 253. The letter "B" also appeared next to each black prospective juror's name. See, *e.g., ibid.* According to the testimony of Clayton Lundy, an investigator who assisted the prosecution during jury selection, these highlighted venire lists were circulated in the district attorney's office during jury selection. That allowed "everybody in the office"—approximately "10 to 12 people," including "[s]ecretaries, investigators, [and] district attorneys"—to look at them, share information, and contribute thoughts on whether the prosecution should strike a particular juror. Pl. Exh. 1, 2 Record

5

190, 219 (Lundy deposition) (hereinafter Tr.). The documents, Lundy testified, were returned to Lanier before jury selection. *Id.,* at 220.

(2) A draft of an affidavit that had been prepared by Lundy "at Lanier's request" for submission to the state trial court in response to Foster's motion for a new trial. *Id.,* at 203. The typed draft detailed Lundy's views on ten black prospective jurors, stating "[m]y evaluation of the jurors are a[s] follows." App. 343. Under the name of one of those jurors, Lundy had written:
"If it comes down to having to pick one of the black jurors, [this one] might be okay. This is solely my opinion.... Upon picking of the jury after listening to all of the jurors we had to pick, if we had to pick a black juror I recommend that [this juror] be one of the jurors." *Id.*, at 345 (paragraph break omitted) . . .

(3) Three handwritten notes on black prospective jurors Eddie Hood, Louise Wilson, and Corrie Hinds. Annotations denoted those individuals as "B # 1," "B# 2," and "B# 3," respectively. App. 295–297. Lundy testified that these were examples of the type of "notes that the team—the State would take down during voir dire to help select the jury in Mr. Foster's case." Tr. 208–210.

(4) A typed list of the qualified jurors remaining after *voir dire*. App. 287–290. It included "Ns" next to ten jurors' names, which Lundy told the state habeas court "signif[ied] the ten jurors that the State had strikes for during jury selection." Tr. 211. Such an "N" appeared alongside the names of all five qualified black prospective jurors. See App. 287–290. The file also included a handwritten version of the same list, with the same markings. *Id.*, at 299–300; see Tr. 212. Lundy testified that he was unsure who had prepared or marked the two lists.

(5) A handwritten document titled "definite NO's," listing six names. The first five were those of the five qualified black prospective jurors. App. 301. The State concedes that either Lanier or Pullen compiled the list, which Lundy testified was "used for preparation in jury selection." Tr. 215; Tr. of Oral Arg. 45.

(6) A handwritten document titled "Church of Christ." A notation on the document read: "*NO*. No *Black* Church." App. 302.

(7) The questionnaires that had been completed by several of the black prospective jurors. On each one, the juror's response indicating his or her race had been circled. *Id.,* at 311, 317, 323, 329, 334.

<u>Foster v. Chatman</u>, 136 S.Ct. 1737, 1744, 195 L.Ed.2d 1 (2016).

Louisiana has elevated the right to access public records to a Constitutional right which should be zealously guarded by the judiciary. Any legislation purporting to limit or take away the right from a particular class of citizens must be strictly construed and narrowly tailored to safeguard or further a compelling state interest.

In oral argument the state argues applying the limitation in Louisiana is not overly burdensome in this case because the attorney simply needed to articulate some ground, albeit contrived, upon which to base an application for post-conviction relief even without the District Attorney's file in hand. This simple gesture, the state submitted, would satisfy its inquiry. I believe the state's suggestion must be rejected outright. Not even the state legislature has the authority to compel a lawyer to breach the code of ethics governing his role as an officer of the court. "Thou shall not lie" is a rule which forms the cornerstone of a lawyer's ethical obligation and serves as a moral imperative even in his or her personal dealings.

Boren indicates he has practiced criminal law, exclusively, for forty years and has filed about one hundred applications for post-conviction relief. He maintains this is the first time in forty years he has been denied access to public records in connection with an application for post-conviction relief. He urges under La.R.S. 44:32, a custodian shall make no inquiry of any person who applies for a public record, except an inquiry as to the age and identification of the person. Boren acknowledges if a custodian believes records are being sought for post-conviction litigation, then La.R.S. 44:31.1 permits a custodian of records *to determine only if the person seeking the records is an individual in custody.* I believe this is a correct interpretation of the law.

In support of his argument, Boren cites *Innocence Project New Orleans v. New Orleans Police Dep't*, 13-921 (La.App. 4 Cir. 11/6/13), 129 So.3d 668. In that case the Innocence Project of New Orleans (IPNO), a non-profit law firm which seeks to exonerate persons who have been wrongfully convicted, submitted a public records request to the New Orleans Police Department (NOPD). The request for records pertained to the police investigation and arrest of Bennie Brown whose conviction had been final for almost twenty years prior to the request. The NOPD did not respond to the written request within the three-day statutory period or after IPNO's several attempts to follow up on the request during the following three months. Sixty-five days after the initial written request, the NOPD denied the request, except for the initial police report, on the basis that the requested records were exempt under La. R.S. 44:3(A)(1), but actually quoting La.R.S. 44:3(A)(4)(a).

The IPNO subsequently filed a petition for a writ of mandamus and sought attorney's fees, the costs of litigation, and statutory penalties for the custodian's untimely response to the request. Following a hearing at which the custodian did not testify, the trial court made the writ peremptory and ordered the production of the records. The trial court awarded attorney's fees, costs, and penalties. On appeal, the custodian sought review of the award of attorney's fees, costs, and penalties, not the issuance of the writ of mandamus. The appellate court held that the trial court was correct in awarding the mandated costs of litigation and attorney's fees and that the discretionary imposition of civil penalties on the custodian was not an abuse of the trial court's discretion.

Boren also relies on the decision in *Trenticosta v. Mamoulides*, 93-621 (La.App. 5 Cir. 2/23/94), 633 So.2d 786, *writ denied*, 94-1295 (La. 9/2/94), 643

8

So.2d 147, wherein counsel for a death row inmate sent a request to the district attorney to inspect and copy the public records in his custody regarding the investigation, arrest, and prosecution of his client. The district attorney allowed counsel to examine and copy certain files but withheld two folders on the basis of work product. Counsel subsequently filed a petition for writ of mandamus pursuant to La. R.S. 44:35, requesting the trial court compel the district attorney to disclose the records. The trial court denied relief. On appeal, the court noted "that the finality of a conviction does not warrant open season on every item in the district attorney's files." (*Id*. at 787). Further, the appellate court found the district attorney was entitled to the protection of the Work Product Rule and that several items listed as being retained were not subject to disclosure.

Boren notes the district attorney in *Innocence Project New Orleans* and *Trenticosta* did not raise the issue of whether an attorney can request public records on behalf of an incarcerated client without setting forth a reason for seeking post-conviction relief. The state's appeals in essence concede this point by urging only the work product exception to full disclosure. The majority rejects this reasoning and maintains there is no jurisprudence directly on point with regard to the issue presented here and says "none of the cases relied upon by Boren directly address the issue of whether an attorney can request public records on behalf of an incarcerated client under La.R.S. 44:31.1, without setting forth a reason for seeking post-conviction relief." Instead, the majority finds the decision in *Revere v. Canulette*, 97-552 (La.App. 1 Cir. 1998), 715 So.2d 47, *writ granted in part, denied in part*, 98-1493 (La. 1/29/99), 730 So.2d 870, though admittedly not dispositive of the issue herein, "provides some instructional value." In *Revere* the court found that La.R.S. 44:31.1 does not violate the rights provided by the

9

Louisiana or United States Constitutions. The majority looks to Judge Guidry's dissent, which reads, in part, as follows:

> Prior to the enactment of LSA-R.S. 44:31.1, courts interpreted the Public Records Act as allowing inmates the right of access to public records without limiting the access for a particular purpose. *See, e.g., Elliott v. District Attorney of Baton Rouge*, [94-1804 (La.App. 1 Cir. 9/14/95),] 664 So.2d 122. Now, LSA-R.S. 44:31.1 does away with a prisoner's right of access to the public records "who has exhausted his appellate remedies when the request for public records is not limited to grounds upon which the individual could file for post conviction relief under Code of Criminal Procedure Article 930.3." There is nothing in the statute that would allow an inmate, by mail or by representative, to escape the inquiry and denial by the custodian based on the grounds for which he seeks the records. Accordingly, I believe LSA-R.S. 44:31.1 is substantive in nature and must be applied prospectively only.

*Id*. at 57 (emphasis added).

On writs to the state supreme court, the majority opinion was reversed on the issue of retroactivity finding La.R.S. 44:31.1 is substantive and is a fundamental break from prior law on access to public records. The matter was remanded to the trial court to determine if the defendant was entitled to access the police photographs and radio logs. The decision in that case has no bearing on the case now under consideration. The state supreme court in reversing the lower court did not address the issue presented here. More importantly, the jurisprudence is clear regarding the constitutional right of Louisiana citizens to access public records and is clear that any law seeking to limit that access must be strictly construed. The majority fails to follow this mandate, and, based on its notion of agency, expands the statutory exception to include Boren as Bergeron's agent standing in his shoes. I believe this is error. The majority says to interpret the statute otherwise "would negate the purpose for the enactment of La.R.S. 44:31.1." Respectfully, the purpose of the statute seems quite clear to me, i.e. to limit the constitutional right of the public's access to information **only** when the "individual" seeking the information is "**an individual in custody after sentence following a felony conviction who has exhausted his appellate remedies**." La.R.S. 44:31.1. (emphasis added)

Its aim, I am convinced, was to prevent repeated public records requests by incarcerated individuals who routinely bombard the courts with frivolous post-conviction filings, and who unnecessarily tax the resources of the public by placing an unwarranted burden on the custodians of public records. Nothing in the statute limits Boren's right as a Louisiana citizen to access the requested information free of any constraints. As stated by Boren, allowing him access to the public record actually advances the interest the legislature sought to protect by enacting La.R.S. 44:31.1. Boren is entitled to attorney fees, costs and damages pursuant to La.R.S. 44:35, and the case should be remanded to the trial court for determination of those amounts.